# United States Court of Appeals
## For the First Circuit

No. 09-2207

CARMEN M. OCASIO-HERNÁNDEZ, et al.,

Plaintiffs, Appellants,

v.

LUIS FORTUÑO-BURSET, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Lipez, and Thompson, Circuit Judges.

Carlos A. Del Valle Cruz, with whom Landrón & Vera, Eileen
Landrón Guardiola and Eduardo Vera Ramírez were on brief, for
appellants.
Michael C. McCall, with whom Aldarondo & López Bras and
Eliezer Aldarondo-Ortiz were on brief, for appellees.

April 1, 2011

**LIPEZ, Circuit Judge**.  This case involves a claim of political discrimination stemming from the 2008 gubernatorial election in Puerto Rico.  Fourteen maintenance and domestic workers, all members of Puerto Rico's Popular Democratic Party ("PDP"), brought suit in federal district court alleging that they were unconstitutionally terminated from their public employment at the governor's mansion, La Fortaleza, shortly after the election of Governor Luis Fortuño-Burset ("Fortuño"), President of Puerto Rico's New Progressive Party ("NPP").  The complaint named four principal defendants, in both their individual and official capacities, as well as their spouses and conjugal partnerships: Governor Fortuño, the nominating authority at La Fortaleza; First Lady Luce Vela ("Vela"), the chairperson of a committee for the maintenance, restoration, and preservation of La Fortaleza; Chief of Staff Juan Carlos Blanco ("Blanco"); and Administrator Velmarie Berlingeri Marín ("Berlingeri").[1]  The district court, applying the federal notice pleading standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), dismissed the workers' complaint for failing to state a plausible claim for relief.

After a careful review of the record and the teachings of Twombly and Iqbal, we conclude that the district court applied the

---

[1] The record contains two different spellings of Berlingeri's name.  We adopt the spelling used in the defendants' brief.

notice pleading standard incorrectly. The allegations in the complaint do state a plausible claim of political discrimination in violation of the First Amendment to the United States Constitution. We vacate the dismissal of that claim.

**I.**

## A.  The Complaint

Because this appeal follows the allowance of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we recite the facts of the plaintiffs' claim as alleged in the complaint. See SEC v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc).

Fortuño was elected Governor of the Commonwealth of Puerto Rico on November 4, 2008, and he assumed that office on January 2, 2009. As Governor, he is the nominating authority at La Fortaleza; he approves or disapproves of all personnel decisions relating to employment at the mansion. In early January 2009, Governor Fortuño named defendant Berlingeri Administrator at La Fortaleza, and he signed an executive order authorizing her to terminate employees there on his behalf. He also named defendant Blanco Chief of Staff. As the First Lady of Puerto Rico, defendant Vela chairs the Conservation and Maintenance of La Fortaleza Committee and is responsible for overseeing the mansion; she has publicly acknowledged her personal involvement in overseeing repairs and refurbishing work at La Fortaleza.

-3-

Shortly after Governor Fortuño took office, logos, emblems, and flyers supporting the NPP and Governor Fortuño were prominently displayed at La Fortaleza. Employees at the mansion openly discussed their political affiliations, as some NPP-affiliated employees were promoted to high-level trust positions while rumors spread of a list of PDP-affiliated employees who would be terminated and replaced with NPP-affiliated workers. Employees were questioned on multiple occasions, including by Governor Fortuño himself, about the circumstances of their hire at La Fortaleza, which the plaintiffs contend was merely an attempt to ascertain or verify each employee's political affiliation. Indeed, the new administration brought in confidential clerical personnel who interrogated employees for that very purpose.

Governor Fortuño's campaign jingle, "It's time to change," proved to be a recurring theme for employees at La Fortaleza following the change in administration. One of Berlingeri's trusted aides used the jingle as the ringtone on his cellular telephone (which also prominently displayed the NPP logo). He would also loudly sing the jingle in front of the maintenance employees he commanded and would state on occasion that things had indeed changed. Similarly, First Lady Vela informed employees that "changes had come," and she would make disparaging and derogatory comments about the prior PDP administration to employees as they executed their duties. She was also overheard stating her intent

to "clean up the kitchen," an apparent reference to an impending change in kitchen staff.

The plaintiffs in this case performed maintenance work or housekeeping tasks at La Fortaleza, such as laundry, ironing, sewing, and cleaning. Some of the plaintiffs had held their positions at the mansion for nearly twenty years. On either February 27 or March 11 of 2009, each of the plaintiffs received a termination letter signed by Berlingeri. They were fired without notice, without cause, and without having their job performance evaluated by the incoming administration. None of the plaintiffs had been known members of the NPP. Within days, their positions at La Fortaleza were filled by NPP-affiliated workers.

In answering press questions about the layoffs at La Fortaleza, Blanco stated falsely that the employees who were terminated had been privy to confidential, sensitive information. In actuality, none of the plaintiffs had held policy-making positions, performed functions similar to those performed by policy-making employees, or had access to confidential information related to policy. Blanco further informed the press, "We are making employment evaluations every month," an assertion belied by the lack of evaluation preceding the plaintiffs' terminations.

The defendants made other public statements indicating that political affiliation may have been a consideration in the administration's employment decisions, including those at La

Fortaleza. In addressing the press on the topic of government layoffs generally, Governor Fortuño flatly stated that "none of them voted for him," in reference to the employees who might be terminated. When specifically responding to criticism by a group of terminated employees who were protesting at La Fortaleza, Blanco made disparaging comments about the prior PDP administration and acknowledged that the fired employees were part of that administration. Berlingeri similarly made disparaging remarks about the prior administration when addressing criticism by a group of terminated employees.

## B. Procedural Background

The plaintiffs brought suit in federal district court pursuant to 42 U.S.C. § 1983, supplemented by claims brought under the laws and Constitution of Puerto Rico. They alleged three constitutional violations in the termination of their employment: political discrimination in violation of the First Amendment, deprivation of a property interest without due process of law, and the denial of equal protection.

At an initial case conference in April 2009, the district court informed the plaintiffs that their complaint satisfied the federal notice pleading standard, and it advised the defendants not to file a Rule 12(b)(6) motion to dismiss the complaint. In May 2009, however, the district court scheduled an emergency hearing motu proprio to hear arguments on whether the recently issued Iqbal

decision required the complaint to be dismissed due to insufficient factual allegations.  At that hearing, the defendants officially moved to dismiss the complaint.  The court denied the defendants' motion without prejudice and granted the plaintiffs thirty days to amend their complaint to comply with Iqbal.  The plaintiffs timely filed an amended complaint, and the defendants again moved to dismiss.  After a hearing, the district court dismissed the amended complaint for failure to state a claim.[2]

## C.  The District Court Opinion

The district court began its opinion and order in this case by dismissing all claims against three of the four defendants -- Governor Fortuño, First Lady Vela, and Blanco.  According to the court, the factual allegations in the complaint failed to show with the required specificity that those three defendants had caused the plaintiffs' terminations.  The court described the plaintiffs' case against those defendants as resting on "an implicit assumption that the defendants' [sic] participated in the decision" because of their positions of authority.  It noted that "no additional factual allegations, such as interactions between the defendants and particular plaintiffs, . . . tie Fortuño, Vela, and Blanco to the deprivation of the plaintiffs' constitutional rights."

---

[2] The plaintiffs do not challenge the dismissal of their § 1983 claims based on the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.

The district court did find, however, that the plaintiffs had "minimally satisfied" their burden of pleading Berlingeri's participation in the terminations, "since the plaintiffs allege that she signed the letter which officially separated the plaintiffs from their employment at La Fortaleza." It nevertheless concluded that the plaintiffs' political discrimination claim failed because the complaint lacked sufficient factual allegations to show that Berlingeri had knowledge of the plaintiffs' political affiliation or that political affiliation played a role in the termination decision: "The fact that Berlingeri may have made disparaging remarks about the previous administration does not lead to the conclusion that she thought or knew that plaintiffs were PDP members or supporters." It found that "the same can be said" with respect to the plaintiffs' allegations that Berlingeri's trusted aide was a staunch NPP supporter, wore the party's logo, and sang Governor Fortuño's campaign jingle. The court also discounted the complaint's allegation that Berlingeri, the other defendants, and newly hired clerical staff had inquired into the circumstances of the plaintiffs' hire at La Fortaleza. It noted that the complaint "contains no specific account of these conversations," and thus described it as "a generic allegation, made without reference to specific facts that might make it 'plausible on its face.'" The court further explained that had such inquiries taken place, that fact would "not lead to the conclusion that [the defendants] did so

-8-

in order to ascertain [the plaintiffs'] political affiliation, or that they in fact gained that information."

The court likewise discounted the plaintiffs' allegation that they were replaced in their positions by NPP-affiliated workers, describing it as "a conclusory statement." It pointed out that the "plaintiffs do not identify who replaced any or all of the plaintiffs, nor the date of these replacements" and that the complaint merely asserts "that this occurred as to all of the plaintiffs." Further, the court found that the defendants' failure to justify the terminations or to conduct performance evaluations was not "relevant" to the claim, as "plaintiffs were not entitled to any explanation." Lastly, the court explained that "mere temporal proximity" between a change in administration and an employee's dismissal is "insufficient to establish discriminatory animus."

## II.

We review the dismissal of a complaint under Rule 12(b)(6) de novo. E.g., Tasker v. DHL Retirement Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010). The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Supreme Court has twice recently clarified the requirements of an adequately stated federal claim. Given the

nature of the district court's errors in this case, and the frequent invocation of these cases by litigants and the district courts, we think it useful to set forth in some detail an account of those two decisions.

**A.   Bell Atlantic Corp. v. Twombly**

In Twombly, the Supreme Court affirmed the district court's dismissal of an antitrust class-action suit brought under Section 1 of the Sherman Act, 15 U.S.C. § 1.  550 U.S. at 548.  The plaintiffs claimed that a group of regional telephone service providers had conspired to restrain trade by restricting the growth of upstart competitors while refraining from competing with one another.  Id. at 550.  The complaint both directly alleged that the defendant service providers "'have entered into a contract, combination or conspiracy to prevent competitive entry in their respective . . . markets'" and also alleged conduct from which, according to the plaintiffs, a conspiracy could be inferred, such as an "'absence of any meaningful competition between [the defendants] in one another's markets'" and a "'parallel course of conduct that each engaged in to prevent competition from [upstart competitors].'"  Id. at 551.  The Court of Appeals for the Second Circuit reversed the district court's order dismissing the case, asserting that "to rule that allegations of parallel anti-competitive conduct fail to support a plausible conspiracy claim, a court would have to conclude that there is no set of facts that

-10-

would permit a plaintiff to demonstrate that the particular parallelism asserted was the product of collusion rather than coincidence." Id. at 553 (internal quotation marks omitted).

The Supreme Court reversed the Second Circuit and reinstated the district court's order of dismissal. The Court explained that the propriety of dismissal under Rule 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2), which mandates that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). Id. at 555. It further explained that a "short and plain" statement does not need detailed factual allegations. Id. at 555. That aspect of the Rule merely requires sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests. Id. (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, the Twombly Court reasoned, Rule 8(a)(2) also requires "that the plain statement possess enough heft to show that the pleader is entitled to relief." Id. at 557 (emphasis added) (internal quotation marks omitted). It stated that a complaint only "shows" an entitlement to relief if its factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See id. at 555 (citation omitted). According to the Court, Rule 8(a)(2) must require more

than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. However, the Twombly Court was also careful to explain that "[h]ere, . . . we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Applying the Rule 8 pleading standard to the facts of the case before it, the Twombly Court disregarded the complaint's allegations that the defendants had "entered into a contract, combination or conspiracy" and had "agreed not to compete with one another." According to the Court, "on fair reading these are merely legal conclusions resting on the prior allegations" of parallel conduct and non-competition: "the complaint leaves no doubt that plaintiffs rest their § 1 claim on descriptions of parallel conduct and not on any independent allegation of actual agreement among the [defendants]."[3] Id. at 564.

Taking as true the remaining allegations that the defendants had "engaged in parallel conduct" and had failed to

---

[3] The Court noted that if the plaintiffs had intended these statements to serve as factual allegations that an agreement occurred, it is doubtful that they would have provided the defendants with the notice required by Rule 8(a)(2): "Apart from identifying a seven-year span in which the § 1 violations were supposed to have occurred," "the complaint here furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place. . . . [A] defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin." Twombly, 550 U.S. at 564 n.10.

"meaningfully pursue" "attractive business opportunit[ies]," the Twombly Court concluded they were insufficient to "invest[] either the action or inaction alleged with a plausible suggestion of conspiracy." Id. at 564-66. It explained that, under the Sherman Act, "[e]ven conscious parallelism, a common reaction of firms in a concentrated market that recognize their shared economic interests . . . is not in itself unlawful," and that "proof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action." Id. at 553-54 (internal quotation marks omitted) (alterations omitted). The Court reasoned that, though the alleged conduct was "consistent with conspiracy," it was "just as much in line with a wide swath of rational and competitive business strategy." Id. at 554.

Indeed, the Court emphasized that the alleged conduct held almost no probative value in showing the existence of a conspiracy:

> [T]here is no reason to infer that the companies had agreed among themselves to do what was only natural anyway; so natural, in fact, that if alleging parallel decisions to resist competition were enough to imply an antitrust conspiracy, pleading a § 1 violation against almost any group of competing business would be a sure thing.

Id. at 566. Finding an "obvious alternative explanation" for the alleged behavior of the defendants, the Twombly Court concluded that the "plaintiffs here have not nudged their claims across the line from conceivable to plausible." Id. at 567, 570.

-13-

In describing facial plausibility as the governing standard of Rule 8(a)(2), Twombly officially put to rest the well-known "no set of facts" language used in one of the Court's earliest opinions interpreting the Federal Rules, Conley v. Gibson, 355 U.S. at 45-46. 550 U.S. at 561. Although the Twombly Court acknowledged that Conley's language had been sensible in the context of the case, it was at best "an incomplete, negative gloss on an accepted pleading standard." Id. at 563. That language had been erroneously employed by the Second Circuit to reverse the district court's order of dismissal, and the Twombly Court expressed its concern that the "no set of facts" formulation can too easily "be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." Id. at 561. It elaborated:

> On such a focused and literal reading . . . a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. . . . It seems fair to say that this approach to pleading would dispense with any showing of a reasonably founded hope that a plaintiff would be able to make a case; Mr. Micawber's optimism would be enough.

Id. at 561-62 (alteration omitted) (citation omitted) (internal quotation marks omitted). The Court thus announced that, "after puzzling the profession for 50 years, this famous observation has earned its retirement." Id. at 563.

-14-

Importantly, even while retiring one famous precedent, the Twombly Court explicitly affirmed another. It emphasized that requiring a plaintiff to show a plausible entitlement to relief was not the same as imposing a "heightened pleading requirement," and was therefore not inconsistent with the Supreme Court's previous declaration in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), that a court may not insist on the allegation of "specific facts" that would be necessary to prove the claim at trial. See Twombly, 550 U.S. at 570. To do so is incompatible with the notice pleading structure of the Federal Rules. Id. The Court reiterated: "Here, our concern is not that the allegations in the complaint were insufficiently 'particularized'; rather, the complaint warranted dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible." Id. at 569 n.14 (alteration omitted) (internal citation omitted).

## B. **Ashcroft v. Iqbal**

Iqbal involved a § 1983 claim brought by a detainee who had been held in a Brooklyn detention center in the wake of the September 11, 2001, terrorist attacks. 129 S. Ct. at 1943. The complaint alleged that the conditions of the plaintiff's detention resulted from unconstitutional racial, ethnic, and religious discrimination in designating him a person of "high interest." Id. at 1943-44. Among the defendants named in the suit were Attorney General John Ashcroft and Director of the Federal Bureau of

-15-

Investigation ("FBI") Robert Mueller.  Id. at 1942.  After the Second Circuit affirmed the district court's denial of their motion to dismiss, these two defendants petitioned for certiorari.  Id.

To provide guidance to lower courts on how best to apply the plausibility requirement of Rule 8(a)(2), the Iqbal Court endorsed a two-pronged approach that it saw as implicit in the Twombly decision.  Id. at 1950.  Under this approach, a court resolving a Rule 12(b)(6) motion to dismiss should begin by separating a complaint's factual allegations from its legal conclusions.  See id. at 1949-50.  Unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth.  Id.  The Iqbal Court pointed to the allegation that the Twombly defendants had "entered into a contract, combination, or conspiracy," which had been disregarded by the Twombly Court, as an example of a conclusory statement that, though presented as an assertion of fact, simply describes the legal conclusion that the plaintiffs sought to infer from the other conduct alleged in the complaint.  See id. at 1950.  The Court explained that, if this conclusory allegation were afforded a presumption of truth, the Twombly plaintiffs "would have stated a claim for relief and been entitled to proceed perforce."  Id.

The second prong of the approach endorsed by the Iqbal Court requires a reviewing court to accept the remaining factual allegations in the complaint as true and to evaluate whether, taken

-16-

as a whole, they state a facially plausible legal claim. See id. According to the Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Echoing Twombly's conclusion that the allegation of parallel conduct was "just as much in line" with innocent conduct as with conspiracy, 550 U.S. at 554, the Iqbal Court reiterated that a complaint may not stand simply on the "sheer possibility" that a defendant acted unlawfully or on facts that are merely consistent with a defendant's liability. See 129 S. Ct. at 1949. It cautioned, however, that evaluating the plausibility of a legal claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

Applying this two-pronged approach, the Iqbal Court identified and disregarded an allegation in the plaintiff's complaint that these two defendants, high-ranking government officials, "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin." Id. at 1951 (alteration omitted) (internal quotation marks omitted). The Court emphasized that this conclusory allegation simply mirrored the legal standard against which the complaint is to be tested, noting that "Rule 8 does not

empower [the plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." Id. at 1954.

Turning to the remaining factual allegations, the Court reasoned that the plaintiff's claim was implausible. Although the complaint included a factual allegation that the FBI "arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11," the Court found that an inference of discriminatory intent was unreasonable in light of the "more likely explanations." Id. at 1951 (alteration in original) (internal quotation marks omitted). Recounting the circumstances of the September 11 attacks, the Court explained why "[i]t should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." Id. It also pointed out that the plaintiff's only factual allegation specific to the two petitioning defendants accused them of "adopting a policy approving of restrictive conditions of confinement for post-September-11 detainees." Id. at 1952 (internal quotation marks omitted). The Court explained that nothing in this allegation shows the defendants' discriminatory intent: "[A]s we have noted, [the defendants] cannot be held liable unless they themselves acted on

-18-

account of a constitutionally protected characteristic.  Yet [the plaintiff's] complaint does not contain any factual allegation sufficient to plausibly suggest [the defendant's] discriminatory state of mind."  Id.

## C.  The Current State of Federal Notice Pleading

We distill the following principles from Twombly and Iqbal.

Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  See Iqbal, 129 S. Ct. at 1949; Twombly 550 U.S. at 555.  A "short and plain" statement needs only enough detail to provide a defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (citing Conley, 355 U.S. at 47); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement . . . .' Specific facts are not necessary.").  However, in order to "show" an entitlement to relief a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  See Twombly, 550 U.S. at 555 (citation omitted); see also Iqbal, 129 S. Ct. at 1950.  "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim.

In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as . . . fact[]'" or "[t]hreadbare recitals of the elements of a cause of action." Id. at 1949-50 (quoting Twombly, 550 U.S. at 555). A plaintiff is not entitled to "proceed perforce" by virtue of allegations that merely parrot the elements of the cause of action. See id. at 1950; cf. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (disregarding as conclusory, under Iqbal's first prong, a factual allegation that merely "[p]arrot[ed] our standard for supervisory liability in the context of Section 1983" in alleging that defendants had "failed to [supervise] with deliberate indifference and/or reckless disregard of Plaintiff's federally protected rights"). Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible. Iqbal, 129 S. Ct. at 1951 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly

-20-

fanciful nature, that disentitles them to the presumption of truth."). But cf. Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal quotation marks omitted). If that factual content, so taken, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. Iqbal, 129 S. Ct. at 1949. "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.).

Although evaluating the plausibility of a legal claim "requires the reviewing court to draw on its judicial experience and common sense," Iqbal, 129 S. Ct. at 1950, the court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556; see also Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; "a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely."

-21-

<u>Twombly</u>, 550 U.S. at 556 (internal quotation marks omitted); <u>see also</u> <u>id.</u> at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.

With these principles in mind, we turn to the claim at issue.

### III.

Government officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment. <u>See</u> <u>Rutan</u> v. <u>Republican Party of Ill.</u>, 497 U.S. 62, 75-76 (1990); <u>Welch</u> v. <u>Ciampa</u>, 542 F.3d 927, 938-39 (1st Cir. 2008). An actionable claim of political discrimination consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." <u>Lamboy-Ortiz</u> v. <u>Ortiz-Vélez</u>, 630 F.3d 228, 239 (1st Cir. 2010). There is no question about the adequacy of the

-22-

plaintiffs' complaint in this case with respect to two of these elements. The complaint contains straightforward factual allegations describing the parties' opposing political affiliations, including that the "[d]efendants all belong to the NPP," that "[e]ach and all plaintiffs are members of the Popular Democratic Party . . . or are believed to be a member of the PDP," and that each plaintiff "was not a known member of the New Progressive Party." On review of a motion to dismiss, we must accept these allegations as true. Additionally, the defendants do not contest that the plaintiffs have adequately alleged that the termination of the plaintiffs' employment at La Fortaleza constitutes an adverse employment action.

At issue, then, is the correctness of the district court's conclusion that the plaintiffs' complaint fails to show that the defendants had knowledge of the plaintiffs' political affiliation and that the plaintiffs' political affiliation motivated the defendants' participation in the plaintiffs' terminations.

## A. The Defendants' Knowledge

The district court assessed only Berlingeri's knowledge of the plaintiffs' political affiliation because it dismissed all claims against Governor Fortuño, First Lady Vela, and Blanco on the ground that the allegations were insufficient to show their participation in the plaintiffs' terminations. In effect, the

court performed a causation analysis at the outset of its opinion that obviated the need for an element-by-element assessment of the plaintiffs' claims with respect to three of the four defendants. As we explain below, we disagree with the court's conclusion on causation. Hence, we must assess whether the plaintiffs' allegations show that all four defendants had knowledge of the plaintiffs' political affiliation.

The district court concluded that the plaintiffs' complaint inadequately alleged Berlingeri's knowledge. In reaching that conclusion, it disregarded as "conclusory" an allegation that the plaintiffs were replaced by NPP-affiliated workers because the plaintiffs "do not identify who replaced any or all of the plaintiffs, nor the date of these replacements." It also disregarded as "generic, blanket statements" numerous allegations that the defendants and their subordinates had questioned the plaintiffs about the circumstances of their hires in order to discern their political affiliations. The court explained that the complaint "contains no specific account of these conversations." The court then added that, even if the defendants had questioned the plaintiffs about the circumstances of their employment, such questioning "does not lead to the conclusion that [the defendants] did so in order to ascertain [the plaintiffs'] political affiliation, or that they in fact gained that information." It reasoned similarly with respect to allegations about disparaging

remarks made by Berlingeri: "The fact Berlingeri may have made disparaging remarks about the previous administration does not lead to the conclusion that she thought or knew that plaintiffs were PDP members or supporters" and that "[t]he same can be said" of the plaintiffs' allegations regarding the overtly politicized conduct of Berlingeri's aide.

The district court erred by not affording the plaintiffs' allegations the presumption of truth to which they were entitled. First, as we explained above, the Supreme Court's concerns about conclusory allegations expressed in Twombly and Iqbal focused on allegations of ultimate legal conclusions and on unadorned recitations of a cause-of-action's elements couched as factual assertions. Allegations of discrete factual events such as the defendants questioning the plaintiffs and replacing the plaintiffs with new employees are not "conclusory" in the relevant sense. Second, factual allegations in a complaint do not need to contain the level of specificity sought by the district court. See, e.g., Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167-69 (1993); cf. Iqbal, 127 S. Ct. at 1951 (accepting allegations that the FBI "arrested and detained thousands of Arab Muslim men" pursuant to a policy that was "approved by [the defendants] in discussions in the weeks after September 11, 2001") (internal quotation marks omitted); Twombly, 550 U.S. at 550-51, 564-65 (accepting allegations that defendants

"engaged in parallel conduct" and failed to "meaningfully . . . pursue attractive business opportunities") (alterations omitted) (internal quotation marks omitted); see also id. at 565 n.10 ("Here, our concern is not that the allegations in the complaint were insufficiently 'particularized'; rather, the complaint warranted dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible.") (alteration omitted) (citation omitted). The plaintiffs' allegations were sufficiently detailed to provide the defendants "fair notice of what the . . . claim is and the grounds upon which it rests." Id. at 555 (internal quotation marks omitted). Those allegations should not have been disregarded.

Additionally, the district court erred when it failed to evaluate the cumulative effect of the factual allegations. The question confronting a court on a motion to dismiss is whether all the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible. See id. at 569 n.14; Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (explaining that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). No single allegation need "lead to the conclusion" -- in the district court's words -- of some necessary element, provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible. See

-26-

Sepúlveda-Villarini, 628 F.3d at 29 ("The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.") (emphasis added). Indeed, the Supreme Court has suggested that allegations that would individually lack the heft to make a claim plausible may suffice to state a claim in the context of the complaint's other factual allegations. See Twombly, 550 U.S. at 557 ("An allegation of parallel conduct . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility.").

We also reject the district court's "lead to the conclusion" formulation to the extent it implies a stronger logical connection than that demanded by plausibility. As we have said previously, "[a] plausible but inconclusive inference from pleaded facts will survive a motion to dismiss." Sepúlveda-Villarini, 628 F.3d at 30.

Taking all well-pleaded factual allegations as true, the plaintiffs in this case have pleaded adequate factual material to support a reasonable inference that the four defendants had knowledge of their political beliefs. The complaint states that the defendants asked several plaintiffs about "the circumstances pertaining to how and when they got to work at Fortaleza"; that an aide to Berlingeri similarly "asked each of them as to how and when they began work at the Governor's Mansion," taking notes on their

-27-

responses; and that confidential clerical personnel brought in by the new administration "insisted on interrogating them in order to ascertain their respective political affiliations." This last allegation, in particular, contains a clear assertion that the clerical staff inquired directly into the plaintiffs' political affiliations, rather than obliquely into circumstances that might imply such affiliations. Cf. Montfort-Rodríguez v. Rey-Hernández, 504 F.3d 221, 226 (1st Cir. 2007) (finding sufficient evidence of a defendant's knowledge where he had asked a subordinate to generate a list of trust employees and where subordinate thereby acquired knowledge of the political affiliation of employees). The plaintiffs' complaint thus plainly shows that the defendants were actively seeking the knowledge in question from the plaintiffs.

The plaintiffs' complaint also shows that the information was potentially accessible to the defendants from sources other than the plaintiffs. The complaint states that employees at La Fortaleza knew, and commonly discussed, the political affiliations of their co-workers. Cf. Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006) (finding sufficient evidence of defendants' knowledge where "evidence portrays a relatively small workplace where everyone knew who everyone else was and political affiliations were common office knowledge"). In the same paragraph, the complaint states that certain NPP-affiliated employees who possessed this information were promoted to "high

-28-

level trust positions" by the defendants following the change of administration and were consulted by the defendants in making employment decisions. These allegations are also consistent with the plaintiffs' allegation of rumors that had spread among employees at La Fortaleza suggesting the defendants were maintaining a list of "employees considered as PDP's [sic] . . . who would be terminated and substituted with NPP'ers [sic]."

In short, in light of the pleadings as a whole, these allegations plausibly show the defendants' awareness of the plaintiffs' political affiliation at the time that they were terminated.

## B. Causation

A plausible discrimination claim requires more than an awareness of the plaintiffs' political affiliations. It requires a reasonable inference that the plaintiffs' political affiliation was a substantial or motivating factor in the defendants' conduct. See Peñalbert-Rosa, 631 F.3d at 594. Moreover, each defendant's role in the termination decision must be sufficiently alleged to make him or her a plausible defendant. After all, "we must determine whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." Sanchez, 590 F.3d at 48; see also Peñalbert-Rosa, 631 F.3d at 594 ("[S]ave under special conditions, an adequate complaint must include not only a plausible claim but also a plausible

defendant.").

> 1. The Defendants' Participation in the Termination Decision.

Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury "resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010). This standard can be satisfied by conduct "'setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Sanchez, 590 F.3d at 50 (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989)). Because precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff at this early stage of the litigation, we take to heart the Supreme Court's call to "draw on our 'judicial experience and common sense' as we make a contextual judgment about the sufficiency of the pleadings." See id. (quoting Iqbal, 129 S. Ct. at 1950).

The district court concluded that the allegations of participation by Governor Fortuño, First Lady Vela, and Blanco were inadequate because they relied entirely on "the positions these defendants hold within the governor's mansion," and "no additional factual allegations, such as interactions between the defendants

and particular plaintiffs, . . . tie Fortuño, Vela, and Blanco to the deprivation of the plaintiffs' constitutional rights."  That conclusion was erroneous.  Although § 1983 liability cannot rest solely on a defendant's position of authority, see Ayala-Rodríquez v. Rullán, 511 F.3d 232, 236 (1st Cir. 2007), the plaintiffs' complaint does include other well-pleaded factual allegations that detail each of these three defendants' level of personal involvement in and familiarity with the plaintiffs' terminations.

According to the complaint, Governor Fortuño is the nominating authority at La Fortaleza.  He approves or disapproves of all personnel decisions at the mansion.  As early as January 2009, Governor Fortuño signed an Executive Order authorizing Berlingeri to issue termination notices at La Fortaleza.  The plaintiffs have alleged that Governor Fortuño personally participated in questioning them about how and when they began to work at La Fortaleza in order to learn their political affiliation. When responding to press questions about the potential termination of government employees, Governor Fortuño allegedly stated that those who would be terminated "did not vote for him."

According to the complaint, First Lady Vela serves as the chair of a committee charged with the maintenance, restoration, and preservation of La Fortaleza.  In that role, she allegedly oversees maintenance and domestic workers.  Indeed, the complaint states that she publicly took personal responsibility for overseeing

certain renovations and improvements in her time at La Fortaleza, demonstrating her active participation in that role.

Vela allegedly interacted with the plaintiffs while they executed their duties, making disparaging remarks to them about the prior PDP administration and informing them that "changes had come." She is also alleged to have been overheard stating her intention to "clean up the kitchen," a remark reasonably understood as reflecting an intent to replace certain staff members. The district court improperly disregarded this comment as "an ambiguous remark that does not necessarily refer to the dismissals at issue in this case." On a motion to dismiss, we are obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor. Given these requirements, the "necessarily refer" standard of the district court is particularly inappropriate for evaluating the sufficiency of the allegations in a complaint.

Finally, Blanco is alleged to be the Chief of Staff at La Fortaleza, a title which itself indicates his role in personnel management. According to the complaint, Blanco was also responsible for answering press questions about the specific terminations at La Fortaleza. In responding to the press, Blanco allegedly lied about the reason for the plaintiffs' termination, claiming that the plaintiffs were privy to confidential information and that performance evaluations were being regularly conducted.

The allegations in the complaint show, however, that Blanco understood the true reason for the terminations at La Fortaleza, which he revealed by making disparaging remarks about the prior PDP administration to a group of former employees who were protesting at the mansion. The complaint also states that Blanco openly acknowledged to the press that some of the terminated employees would be replaced.

As we have often emphasized, one rarely finds "smoking gun" evidence in a political discrimination case. Lamboy-Ortiz, 630 F.3d at 240. Circumstantial evidence must, at times, suffice. Moreover, the requirement of plausibility on a motion to dismiss under Rule 12(b)(6) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct]." Twombly, 550 U.S. at 556. The allegations above plausibly show that each defendant possessed knowledge of and shared some responsibility for the termination of employees at La Fortaleza.[4]

2. Political Affiliation as a Motivating Factor in the Termination of the Plaintiffs' Employment.

Turning to the question of discriminatory motive, we must again conclude that the district court erred. The allegations of the plaintiffs' complaint support the reasonable inference that the

[4] As previously noted, the district court concluded that Berlingeri's participation was adequately pled because the plaintiffs alleged that she signed their termination letters. The defendants do not dispute that conclusion.

-33-

defendants' decision to terminate the plaintiffs' employment was substantially motivated by political affiliation.

We have previously explained that a politically charged employment atmosphere "occasioned by the major political shift from the NPP to the PDP . . . coupled with the fact that plaintiffs and defendants are of competing political persuasions[] may be probative of discriminatory animus." Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993). Here, the plaintiffs have alleged just such a case. Following the election of Governor Fortuño, "logos and flyers allusive to the NPP and Governor Fortuño were in full display and clear to employees at the Governor's Mansion." The political affiliation of employees was "commonly shared and discussed" while rumors spread concerning a list of PDP-affiliated workers who were to be terminated. The plaintiffs alleged that the defendants contributed to the politically charged atmosphere by repeatedly inquiring into the political affiliation of employees and by making disparaging comments to employees about the prior PDP administration, including Vela's expressed intent to "clean up the kitchen" and assertions by Vela and Berlingeri's aide that "things had indeed changed" at La Fortaleza. Cf. Lamboy-Ortiz, 630 F.3d at 239 (holding that it was reasonable for a plaintiff to bring a political discrimination suit against a PDP-affiliated mayor who had made "vitriolic, anti-NPP commentary," had stated an intent to "make [a] cleanup" of certain NPP-affiliated employees, and who was

rumored to have maintained a "list" of NPP-affiliated employees he intended to oust).

The allegations of the complaint go well beyond this atmospheric evidence, however. The plaintiffs alleged that they were fired less than ten weeks after Governor Fortuño assumed office. Although the district court is correct that temporal proximity between the change in political administration and the turnover of staff is not itself sufficient to satisfy a plaintiff's burden of proof on the causation element of a political discrimination claim, it unquestionably contributes at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated. See, e.g., Pequero-Moronta, 464 F.3d at 53. In contrast to their treatment, the plaintiffs alleged that NPP-affiliated employees were promoted to high-level trust positions following the change in administration. Similarly, the plaintiffs alleged that their positions at La Fortaleza were filled almost immediately by NPP-affiliated workers. We have previously described such comparative evidence as "helpful" in demonstrating that a particular plaintiff was targeted for his or her political views. See Mercado-Berrios v. Cancel-Alegría, 611 F.3d 18, 24 (1st Cir. 2010).

Lastly, plaintiffs again point to the public statements made by the defendants as an acknowledgment of the political motivation behind the administration's employment decisions.

-35-

Blanco's alleged misstatements to the press about the reasons for the terminations at La Fortaleza and about conducting regular performance evaluations bolster the plaintiffs' contention that the terminations had a discriminatory basis.[5] See Acevedo-Diaz, 1 F.3d at 68 ("[T]o the extent the reasons given by the employer at the time of the dismissal are later proven false or frivolous, the weight of the evidence of discriminatory animus may be enhanced."). Similarly, viewed in the light most favorable to the plaintiffs, Blanco's and Berlingeri's alleged disparaging remarks about the prior PDP-affiliated administration to terminated employees, and Governor Fortuño's press statements that "none of them voted for him" when questioned about potential employee firings, serve to confirm the plaintiffs' core allegation: the defendants' political biases played a substantial role in the employment decisions at La Fortaleza.

**IV.**

The cumulative weight of the plaintiffs' factual allegations easily nudges their claim of political discrimination "across the line from conceivable to plausible" as to each defendant. Iqbal, 129 S. Ct. at 1951. Read as a whole, the

_____

[5] The district court concluded that, because of the nature of their positions, the plaintiffs "were not entitled to any explanation" for their termination and that the lack of performance evaluations was not "relevant" to the claim. We disagree. The lack of any plausible alternative justification for the plaintiffs' terminations makes the inference of political discrimination from the facts alleged more reasonable.

plaintiffs' complaint unquestionably describes a plausible discriminatory sequence that is all too familiar in this circuit. See, e.g., Peñalbert-Rosa, 631 F.3d 592 (suit against newly elected governor brought by receptionist at public building within La Fortaleza); Vazquez Rios v. Hernandez Colon, 819 F.2d 319 (1st Cir. 1987) (suit against newly elected governor and administrator for political discrimination against domestic workers at La Fortaleza); see generally Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 126 (1st Cir. 2004) ("With each change in administration . . . the federal district courts in Puerto Rico are flooded with hundreds of political discrimination cases, many of which are appealed.").

Under the Federal Rules, no more is required to "unlock the doors of discovery" for these plaintiffs. See Iqbal, 129 S. Ct. at 1950. Although discovery may reveal facts that belie the plaintiffs' claim, that possibility does not negate its plausibility. See Sepúlveda-Villarini, 628 F.3d at 30. "[I]t is simply a reminder that plausibility of allegations may not be matched by adequacy of evidence." Id.

We therefore **vacate** the portion of the district court's order dismissing the plaintiffs' political discrimination claim and supplemental Commonwealth law claims, and the case is hereby remanded. Costs are awarded to the appellants.

**So ordered.**