UNITED STATES DISTRICT COURT 
 DISTRICT OF MASSACHUSETTS 
_______________________________________ 
 ) 
L.F.O.P., E.C.C., J.C.C., F.M., M.U.Z., ) 
A.J.L.N., M.M.S.S., A.P., G.M., individually ) CIVIL ACTION 
and as representatives of a similarly situated ) NO. 4:21-11556-TSH 
class, ) 
 ) 

 Plaintiffs, ) 

 ) 

 v. ) 

 ) 
ALEJANDRO MAYORKAS, in his capacity ) 
as Secretary of the United States ) 
Department of Homeland Security, ) 
UNITED STATES DEPARTMENT OF ) 
HOMELAND SECURITY, UR MENDOZA ) 
JADDOU, in her capacity as Director of the ) 
United States Citizenship and Immigration ) 
Services, and the UNITED STATES ) 
CITIZENSHIP AND IMMIGRATION ) 
SERVICES, ) 

 ) 

 Defendants. ) 

______________________________________ ) 

ORDER AND MEMORANDUM ON DEFENDANTS’ MOTION TO DISMISS (Docket 
 No. 74) 

 2/8/2023 

HILLMAN, D.J. 

 Various noncitizens (collectively “plaintiffs”) with “Special Immigrant Juvenile” status 
(“SIJs”) bring this action against various defendants, challenging the policy of defendant United 
States Citizenship and Immigration Services (“USCIS”) to not allow SIJs a particular route to 
apply for Employment Authorization Documents (“EADs”). Defendants move to dismiss for 
failure to state a claim. (Docket No. 74). For the reasons discussed below, that motion is granted. 
 Background 
 1. Statutory Background 
 In 1990, Congress passed the Immigration Act of 1990, creating SIJ status. 8 U.S.C. § 

1101(a)(27)(J). Under that statute, one receives SIJ status by (1) being declared dependent on a 
juvenile court (2) having an administrative or judicial proceeding finding it would not be in the 
juvenile’s best interest to be returned to the previous country they lived in and (3) receiving 
consent from the secretary of DHS. 
 The following year, Congress passed a law that clarified that SIJs “shall be deemed, for 
purposes of [§ 1255(a)], to have been paroled into the United States.” 8 U.S.C. § 1255(h) 
(“section 1255(h)”). Section 1255(a) allows paroled noncitizens to apply for lawful permanent 
resident status. The most common way to be “paroled” is via 8 U.S.C. § 1182(d)(5) (“section 
1182(d)(5)”), where a noncitizen petitions the Attorney General, who has wide discretion to 

grant or deny petitions. 
 There are dozens of situations in which noncitizens are eligible for EADs. The three 
relevant to this case are described in subsections “(c)(9),” (c)(11)” and “(c)(14)” of 8 C.F.R. § 
274a.12. 
 (c)(9) allows any noncitizen, including an SIJ, who has an application pending for lawful 
permanent resident status to apply for EADs. However, USCIS has interpreted 1255(a) to bar 
applications for lawful permanent resident status when there are no visas available—which also 
bars applications for EADs under (c)(9). Plaintiffs do not challenge that interpretation. If a visa is 
not available for a particular SIJ, they may not apply for adjustment of status and therefore 
cannot apply for EADs via (c)(9). However, both parties agree that, until 2015 or thereabouts, 
there were enough visas for SIJs from the plaintiffs’ home countries that this was not a bar to 
those SIJs using (c)(9) to apply for EADs. 
 (c)(11) allows, subject to exceptions not relevant to this case, a noncitizen “paroled into 

the United States temporarily for urgent humanitarian reasons or significant public benefit 
pursuant to section 212(d)(5) of the Act” to apply for EADs. 212(d)(5) is codified at 8 U.S.C. § 
1182(d)(5)—section 1182(d)(5), discussed above. 
 (c)(14) allows a noncitizen “who has been granted deferred action” to apply for EADs. 
Deferred action is an “act of administrative convenience to the government which gives some 
cases lower priority.” Id. 
 2. The Policy 
 In an earlier phase of this litigation, plaintiffs alleged that USCIS had a policy of refusing 
to entertain applications for EADs on the basis of (c)(11) when submitted by SIJs. USCIS has 

promulgated a policy document while this litigation was pending. USCIS, Policy Alert-2022-10 
(March 7, 2022) (“Policy Alert”). The Policy Alert notes that “SIJ classification does not render 
a noncitizen lawfully present, does not confer lawful status, and does not result in eligibility to 
apply for employment authorization.” Id. at 1. It also concedes that because of visa 
unavailability, “the protection that Congress intended to afford SIJs through adjustment of status 
is often delayed for years, leaving this especially vulnerable population in limbo,” id., opining 
that “Congress likely did not envision that SIJ petitioners would have to wait years before a visa 
became available, since for many years after implementation of the program, SIJs did have visas 
immediately available,” id. To “further[] congressional intent to provide humanitarian protection 
for abused, neglected, or abandoned noncitizen children” USCIS declares it will offer deferred 

action and thus access to EADs via (c)(14) on a case-by-case basis. Id. 
 UCSIC goes on to clarify that “[t]his guidance is controlling and supersedes any prior 
guidance on the topic.” Id. at 2. Furthermore, “USCIS will not publish Federal Register notices 
requesting public comment because public notice is not required for internal policy clarifications. 

This policy update is based on our interpretation of the applicable terms in the Code of Federal 
Regulations and the Immigration and Nationality Act.” Id. at 3. 
 3. The Plaintiffs 
 The plaintiffs are all SIJs from Central American countries who filed for EADs under 
(c)(11). (TAC, at ¶¶ 17-25). At the time of the complaint, the applications had either been denied 
or were pending. Since then, based on the policy described above, their applications have been 
granted, mostly under (c)(14). Plaintiffs acknowledge that all named individual plaintiffs have 
been offered EADs. (Docket No. 109). However, plaintiffs also identify The Political 
Asylum/Immigrant Representation Project (“PAIR”), a non-profit that offers legal services to 

noncitizens, as an organizational plaintiff in their motion to amend. (Docket No. 88, at ¶ 14). 
 To summarize, SIJs from the plaintiffs’ home countries are currently not eligible to apply 
for EADs via (c)(9) because there are no available visas. SIJs in general are not eligible to apply 
for EADs via (c)(11) because of the policy described above. Many—though not all—SIJs are 
eligible to apply for EADs via (c)(14) because they have been granted deferred action. 
 Standard of Review 
 In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine “whether, 
construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], 
the complaint states a claim for which relief can be granted.” Cortés-Ramos v. Martin-Morales, 
956 F.3d 36, 41 (1st Cir. 2020) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st 

Cir. 2011)). The complaint must allege “a plausible entitlement to relief.” Bell Atl. Corp. v. 
Twombly, 550 U.S. 544, 559 (2007). “A claim has facial plausibility when the plaintiff pleads 
factual content that allows the court to draw the reasonable inference that the defendant is liable 
for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). “While legal 

conclusions can provide the framework of a complaint, they must be supported by factual 
allegations.” Id. at 679. 
 Analysis 
 1. Mootness and Standing 
 Defendants argue the plaintiffs’ claims are moot. A case is moot where it is “impossible 
for a court to grant any effectual relief whatever to the prevailing party.” Chafin v. Chafin, 568 
U.S. 165, 172 (2013) (citing Knox v. Serv. Emp’s., 567 U.S. 298, 307 (2012)). Plaintiffs want to 
be able to apply for EADs under (c)(11), not (c)(14). Defendants argue that EADs issued via 
(c)(14) are superior because they last longer and therefore plaintiffs are arguing they are injured 

by lack of access to an inferior work authorization—that is, they are not injured at all. That 
misframes the injury. EADs issued via (c)(11) would connect plaintiffs’ EADs to their status as 
SIJs rather than to their status as recipients of deferred action. SIJ status is more stable than 
deferred action—more than an “act of administrative convenience to the government which gives 
some cases lower priority.” (c)(14); see, e.g., Osorio-Martinez v. Attorney General, 893 F.3d 
153, 166-78 (3d Cir. 2018). The new policy of converting (c)(11) applications to (c)(14) 
applications harms the plaintiffs by tying their EADs to the less-stable deferred action status 
even when they request their EADs be tied to their SIJ status. Therefore, it is possible “for a 
court to grant [] effectual relief.” By ordering USCIS to consider plaintiffs’ (c)(11) applications, 
these plaintiffs would have their EADs tied to a more stable status. Some SIJs might still opt to 

apply for EADs via (c)(14) and receive a longer employment authorization tied to a less stable 
status—but it would be their choice to do so. To be clear, this Court does not understand the 
plaintiffs to be arguing that deferred action might be revoked by a future administration, and 
therefore the issue is not moot; that argument is foreclosed. See generally Calvary Chapel of 

Bangor v. Mills, 52 F.4th 40 (1st Cir. 2022). Instead, it is a challenge to the ongoing policy of 
refusing to grant EADs via (c)(11). A different policy that offers similar, but distinct benefits 
cannot moot that challenge. 
 2. Final Agency Action 
 The defendants argue that no decision can be rendered because there has been no final 
agency action under the APA because no administrative record has been developed. This is a red 
herring. An agency action is “final” if it (1) “marks the consummation of the agency’s 
decisionmaking process” and (2) is “one by which rights or obligations have been determined, or 
from which legal consequences will flow.” See Bennett v. Spear, 520 U.S. 154, 177-78 (1997) 

(citations omitted). 
 The Policy Alert states that: “SIJ classification does not render a noncitizen lawfully 
present, does not confer lawful status, and does not result in eligibility to apply for employment 
authorization.” Policy Alert, at 1 (emphasis added). Deferred action is necessary, in USCIS’s 
view, to grant EADs when SIJ’s “are waiting for a visa number to become available.” Id. In other 
words, it is necessary to use (c)(14), because neither (c)(9) nor (c)(11) are available. The Policy 
Alert confirms that USCIS has adopted the policy that plaintiffs are challenging: refusing to 
consider SIJs applications for EADs based on (c)(11). Furthermore, USCIS announced that 
“[t]his guidance is controlling and supersedes any prior guidance on the topic,” id. at 2, and 
“USCIS will not publish Federal Register notices requesting public comment because public 

notice is not required for internal policy clarifications,” id. at 3 (emphasis added). USCIS has 
published a policy it views internally as final and binding, refused to compile an administrative 
record via notice and comment, and now argues an administrative record must exist to challenge 
that policy. This policy determines the rights and obligations of noncitizens with SIJ status and is 

therefore reviewable under the APA. Union of Concerned Scientists v. Wheeler, 377 F. Supp. 3d 
34, 42-43 (D. Mass. 2019) (finding a “policy directive” that used mandatory language and was 
actually applied met the test articulated in Bennett), aff’d in part, rev’d in part, and remanded, 
954 F.3d 11 (1st Cir. 2020). 
 3. Statutory Interpretation 
 The parties focus on clashing interpretations of section 1255(h). Interpreting (c)(11) 
disposes of this case on narrower grounds. (c)(11) provides that a noncitizen “paroled into the 
United States temporarily for urgent humanitarian reasons or significant public benefit pursuant 
to [section 1182(d)(5)]” may apply for EADs. To the extent that plaintiffs are paroled, they are 

paroled under section 1255(h), not section 1182(d)(5). Therefore, (c)(11) is not applicable to 
SIJs. 
 Plaintiffs counter that section 1255(h)—which confers parolee status on SIJs—should be 
read as: “[an SIJ] shall be deemed, for purposes of subsection (a), to have been paroled into the 
United States [pursuant to 8 U.S.C. § 1182(d)(5).]” They primarily argue that a common 
humanitarian purpose unites the two statutes. Therefore, plaintiffs argue, they are paroled 
pursuant to section 1182(d)(5) and (c)(11) applies to them. This Court cannot read words into the 
statute that are not there. To the extent plaintiffs are paroled, it is plainly by the operation of 
section 1255(h), the statute that grants them parolee status, not section 1182(d)(5). That both 
statutes serve humanitarian purposes or that most parolees are paroled pursuant to section 

1182(d)(5) is not enough for this Court to insert language that is missing from the statute. 
 In response, plaintiffs cite two out-of-circuit cases. Joubert v. Barnhart is distinguishable 
as it interprets 1255(h), not (c)(11). 396 F. Supp. 2d 1320, 1327 (S.D. Fl. 2005). That Court held 
SIJs are “paroled” for the purposes of “REAA status,” which applies to “any national of Cuba or 

Haiti who was paroled into the United States [etc.].” Id. at 1327. REAA status contains “no 
limitation in this provision relating to paroled for certain reasons but not others,” id., and it 
contains no limitation on how a beneficiary is paroled. In contrast, (c)(11) does have a limitation. 
It applies to noncitizens “paroled pursuant to [8 U.S.C. § 1182(d)(5)].” Therefore, the 
interpretation in Joubert of REAA status is irrelevant. 
 Godinez v. United States Department of Homeland Security supports the plaintiffs’ 
position, but it is unpersuasive. 4:20-cv-00828-GAF, at *7 (W.D. Mo. Feb. 10, 2021). That Court 
only interpreted the language in section 1255(h), not the language in (c)(11). The opinion does 
not explain how (c)(11) applies to noncitizens paroled under section 1255(h) when (c)(11) 

references noncitizens paroled “pursuant to [8 U.S.C. § 1182(d)(5)],” not parolees generally. 
 The plaintiffs also argue that the reading would run counter to Congress’ intention to 
ensure that SIJs are able to apply for EADs and the general humanitarian purpose of the acts 
creating SIJ status. Contrary to the defendants’ arguments, the statutory scheme shows an intent 
that SIJs should generally have access to EADs. But the mechanism in the statutory and 
regulatory scheme is for SIJs to apply for lawful permanent resident status and while that 
application is pending, to apply for EADs under (c)(9). But when there are no visas available to 
SIJs, and thus (c)(9)—under the administration’s interpretation—is not available, the Attorney 
General has the discretion to determine if and how SIJs should continue to be able to apply for 
EADs via (c)(14). For this Court to radically depart from the statutory text, the interpretation of 
the plain text of the statute must be absurd, not merely unwise. Cf. Lamie v. U.S. Trustee, 540 
U.S. 526, 536-39 (2004). The statutory scheme described above does not cross that line. 
 Because the statutory interpretation plaintiffs put forward fails, this Court need not 

address the remaining issues, including class certification or the pending motion to amend. 
 Conclusion 
 For the reasons above, the Court grants the motion to dismiss. 

SO ORDERED 
 /s/ Timothy S. Hillman 
 TIMOTHY S. HILLMAN 
 DISTRICT JUDGE