William SURÉN–MILLÁN, Plaintiff,

v.

**UNITED STATES of America, et al., Defendants.**

Civil No. 13–1282 (DRD).

United States District Court, D. Puerto Rico.

Signed July 31, 2013.

Evelyn Aimee de Jesus–Rodriguez, Caguas, PR, for Plaintiff.

Rafael J. Lopez–Rivera, United States Attorneys Office, San Juan, PR, for Defendants.

**OPINION AND ORDER**

Federal Torts Claims Act

DANIEL R. DOMINGUEZ, District Judge.

Pending before this Court is a Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which was filed by the United States of America and the Department of Veteran's Affairs ("Defendants"). (Docket No. 35). Said motion was filed in response to the Second Amended Complaint, see Docket No. 29, which was submitted by William Surén–Millán ("Plaintiff"). The aforementioned complaint invokes *inter alia* medical malpractice claims by way of the Federal Torts Claims Act ("FTCA"), which is governed *inter alia* by 28 U.S.C. §§ 2401(b), and 2671–2680; and Art. 1802 of the Puerto Rico Civil Code ("PRCC"). For the reasons elucidated below, the Motion to Dismiss is hereby **GRANTED** and all other pending case motions shall be terminated upon entry of this Judgment.

**I. Procedural and Factual Background:**

The instant complaint arises from medical services received at a VA Hospital in Puerto Rico ("VA Hospital"). Said services were provided approximately between April 2, 2010 until October 2, 2010. Initially, Plaintiff went to the VA Hospital on April 2, 2010 after suffering an abrasion on his right foot in conjunction with symptoms such as hypertension, drowsiness, fever, and weakness. The VA Hospital's medical staff diagnosed Plaintiff with an infection of his right leg. Seven (7) days later, on April 9, 2010, the medical staff scraped the bone of Plaintiff's right limb in an effort to treat the infection. Subsequently, on June 1, 2010, the medical staff recommended that Plaintiff have a portion of his right leg amputated. Furthermore, Defendants allegedly went so far as to warn Plaintiff that said amputation "was inevitable" as Plaintiff "could die" if said procedure was not carried out. *See* Docket No. 29. Plaintiff's mental and emotional state deteriorated significantly. Consequently, Plaintiff was convinced by his daughter to seek a second opinion before having the procedure carried out. Thus, Plaintiff was taken to Professional Hospital in Guaynabo ("Professional Hospital") where, on June 3, 2010, he received a radically different recommendation: the amputation of only two toes. After the election of this second less-severe procedure, the operation was executed and

Plaintiff remained at Professional Hospital for about two (2) weeks. On July 3, 2010, Plaintiff returned to the VA Hospital in order to receive therapy to aid in his recovery from the operation, which was carried out in the Professional Hospital. Plaintiff was discharged from the VA Hospital on October 2, 2010. Plaintiff is suing for the emotional damages suffered as a result of the VA Hospital's alleged misdiagnosis.

Prior to concluding the discussion regarding the facts of the instant case, the Court emphasizes several dates of critical importance to the pending motion. On June 29, 2012, the daughter of Plaintiff presented a claim before the Department of Veteran's Affairs ("DVA"), filing form 95, regarding the alleged misdiagnosis and improper treatment of her father. On November 28, 2012, the claim was denied by the DVA on the grounds that it was time barred. Thereupon, Plaintiff filed the instant lawsuit on April 9, 2014.

The instant motion to dismiss has been subject to much debate between the parties. Defendants, on February 07, 2014, submitted a motion to dismiss under Rule 12(b)(1). See Fed.R.Civ.P. 12(b)(1). Then, on February 28, 2014, Plaintiff filed an opposition to the motion to dismiss. Moreover, after the Court granted leave to file, Defendants filed a reply to Plaintiff's opposition on March 10, 2014. Finally, on April 07, 2014, Plaintiff presented a sur-reply. Both parties discuss the same points of law but come to entirely different conclusions. Plaintiff avers that the claims accrued on July 3, 2010 while Defendants allege that the claims accrued at least a month earlier. Should the Court agree with Defendants' proposition, Plaintiff's claims would be time barred and ripe for dismissal. Should the Court agree with Plaintiff's proposition, the claims would survive and in-depth discovery will ensue. Having laid

out all of the relevant factual and procedural history, the Court shall expound upon the legal analysis that grounds the instant determination.

## II. Legal Analysis:

The resolution of the pending motion will be centered around the accrual date and statute of limitations under the FTCA. Before entering into the legal discussion, this Court shall briefly reference Fed. R.Civ.P. 12(b)(1), Fed.R.Civ.P. 12(b)(6), and 28 U.S.C. § 2401(b).

### A. Federal Rule of Civil Procedure 12(b)(1)

 A challenge under Rule 12(b)(1) constitutes a challenge to the federal court's subject-matter jurisdiction, which may include ripeness, mootness, and sovereign immunity. See Valentín v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001). Where subject-matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject-matter jurisdiction. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003). Moreover, "it is firmly settled that challenges to federal subject matter jurisdiction may be raised for the first time on appeal." Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 138–39 (1st Cir.2004) (reiterated by Merit Const. Alliance v. City of Quincy, 759 F.3d 122, 126-27, 2014 WL 3457605 *2 (1st Cir. 2014)). "Subject-matter jurisdiction can **never** be waived or forfeited." Gonzalez v. Thaler, —— U.S. ——, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012) (emphasis provided).

The First Circuit has repeatedly described the FTCA statute of limitations, see 28 U.S.C. § 2401, as jurisdictional in nature. See e.g. Román–Cancel v. United States, 613 F.3d 37, 42 (1st Cir.2010). This

interpretation invites a Rule 12(b)(1) dismissal when a plaintiff has not complied with the timelines of § 2401. *See* Fed. R.Civ.P. 12(b)(1) ("[A] party may assert the following defenses by motion: (1) lack of subject-matter **jurisdiction** ...." (emphasis provided)). However, the First Circuit has recently recognized that, pursuant to recent Supreme Court guidance on the term, the FTCA statute of limitations may not be "jurisdictional." *See Sanchez v. U.S.*, 740 F.3d 47, 53–54 (1st Cir.2014) (referencing *Gonzalez*, 132 S.Ct. at 648). Despite the concern expressed by the First Circuit, this Court is not aware of any concrete change to First Circuit precedent regarding § 2401. Therefore, the FTCA statute of limitations is still (apparently) considered to be "jurisdictional" in the First Circuit. Notwithstanding, neither of the parties have made an argument as to the potential inapplicability of Rule 12(b)(1) to the case at bar. Therefore, the issue is deemed to be waived; the Court shall, as proposed by the parties, apply Rule 12(b)(1) to the instant controversy. Nevertheless, out of an abundance of caution and for the sake of completeness, the Court shall further analyze the instant motion under the familiar terrain of Rule 12(b)(6).

## B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b), which contains seven subsections, is the primary source cited by Courts in dismissing defective complaints. *See* Fed.R.Civ.P. 12(b). Upon being confronted with an allegation regarding the sufficiency or insufficiency of a complaint, the Court first turns to Fed.R.Civ.P. 8(a), which enumerates the minimum requirements of a valid complaint:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

A 12(b)(6) motion is used to dismiss complaints that do not "state a claim upon which relief can be granted." *See* Fed. R.Civ.P. 12(b)(6). A 12(b)(6) motion to dismiss will succeed when the pleadings of a complaint do not comply with Rule 8(a)(2). However, what does and does not comply with Rule 8(a)(2) has been the subject of debate for decades in the legal community.

The Supreme Court sparked this debate in 1957 upon being called to evaluate the sufficiency of an allegedly deficient complaint:

In appraising the sufficiency of the complaint [in this case] we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim **unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.** (emphasis provided).

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (overruled by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

This passage, embraced by our highest Court at the time, had been interpreted by many judges and commentators to mean that "a wholly conclusory statement of claim [without more] would survive a [12(b)(6) ] motion to dismiss whenever the [complaint] left open [any] possibility that a plaintiff might later[, during the course of discovery,] establish some set of [undisclosed] facts to support recovery." *Twom-*

*bly,* 550 U.S. 544, 561, 127 S.Ct. 1955 (2007) (describing the evil created by the controversial *Conley* passage) (internal quotations omitted). Such an interpretation harshly affects an innocent defendant's desire to defend himself. "[T]he threat of discovery expense [would] push cost-conscious defendants to settle even anemic cases[.]" *Id.* at 559, 127 S.Ct. 1955. Hence, many other judges and commentators, wary of these negative implications, declined to construe the Supreme Court's words in such a literal manner. The debate raged on for 50 years. Finally, this debate was put to rest by the Supreme Court in 2007: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.* at 563, 127 S.Ct. 1955 (followed by *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

 Instead, the Supreme Court heightened the pleading standard and established that, in order to comply with Rule 8(a)(2), a complaint must state a "plausible" claim for relief, as opposed to merely stating a possible claim for relief. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, **the complaint has *alleged*—but it has not "*show[n]* " "that the pleader is entitled to relief." " (emphasis provided) *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (using the language of Fed. Rule Civ. Proc. 8(a)(2) to explain plausibility). In order to "nudge [a claim] across the line **from conceivable to plausible,**" the complaint must contain enough facts to support a claim for relief. *See Twombly,* at 570, 127 S.Ct. 1955 (emphasis provided). "This plausibility standard has become the 'new normal' in federal civil practice." *Garcia–Catalan v. United States,* 734 F.3d 100, 101 (1st Cir. 2013) (citing *A.G. v. Elsevier, Inc.,* 732 F.3d 77, 78–79 (1st Cir.2013)). In other words, while *Conley* (arguably) states that

a complaint with a conclusory allegation need not have any supporting facts in order to comply with Rule 8(a)(2), both *Iqbal* and *Twombly* take the opposite point of view. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937. The doors of discovery only open when a complaint has "factual allegations [that] are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.' " *Garcia–Catalan,* 734 F.3d at 103 (citing *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir.2011) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937) (internal quotation marks omitted)); *see also Id.,* at 103 ("The circumstances in the complaint create a reasonable expectation that discovery may yield evidence of the government's allegedly tortious conduct") (citing *Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1, 17 (1st Cir.2011)).

> [T]he plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case. *See Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (requiring, as a hallmark of plausibility, that a complaint contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence").

*Garcia–Catalan,* 734 F.3d at 104–05.

Notwithstanding, the First Circuit has been cautious when applying the plausibility analysis to certain types of cases. *Garcia–Catalan,* 734 F.3d at 104 (citing *Menard v. CSX Transp., Inc.,* 698 F.3d 40, 45 (1st Cir.2012)). "Generally speaking, these are cases in which a material part of the information needed [by the plaintiff] is likely to be within the defendant's control." *Garcia–Catalan,* 734 F.3d at 104.

■ Nonetheless, both the Supreme Court and the First Circuit have cautioned against equating a plausibility analysis with an analysis of a plaintiff's likely success on the merits. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *see also Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely") (internal quotation marks omitted); *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir.2010) (affirming that the plausibility standard assumes pleaded facts to be true and are to read in plaintiff's favor) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Iqbal,* 556 U.S. at 678–80, 129 S.Ct. 1937); *see also Id.* at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable' "). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini,* 628 F.3d at 29; *see also Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937 ("To be clear, we do not reject . . . . bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

Some attorneys have argued before the Circuit Courts that the plausibility standard is inconsistent with Fed.R.Civ.P. 84.

Rule 84, in alluding to the forms located in the Federal Rules of Civil Procedure, bluntly states: "[t]he forms in the Appendix **suffice**." (emphasis provided). Some of these aforementioned forms model how certain complaints may be made. *See* Fed.R.Civ.P., Appendix, Form 10 *et seq.* Hence, the argument is as follows: stating a plausible claim of relief is more than what is necessary to comply with the minimum requirements of the complaint form models. However, in response to these arguments, the Circuit Courts have been clear that "the standard announced in *Twombly* and *Iqbal* does not undermine the viability of the federal forms as long as there are sufficient facts alleged in the complaint to make the claim plausible." *Garcia–Catalan,* 734 F.3d at 104 (citing *K–Tech Telecomm., Inc. v. Time Warner Cable, Inc.,* 714 F.3d 1277, 1283–84 (Fed.Cir. 2013); *and Hamilton v. Palm,* 621 F.3d 816, 818 (8th Cir.2010)).[1]

■ The First Circuit has mapped out the proper methodology to adequately analyze the plausibility of the claims present in a complaint:

> **Step one:** isolate and ignore statements in the complaint that **simply** offer legal labels and conclusions or **merely** rehash cause-of-action elements. *Ocasio–Hernandez,* 640 F.3d at 12 (discussing, among other cases, *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, and *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). (emphasis provided)

> *Schatz v. Republican State Leadership Committee,* 669 F.3d 50, 55 (1st Cir. 2012).

This is an exception to the general rule that, when evaluating the sufficiency of a complaint, "a court must accept as true all

---

1. However, this district court alerts counsel that federal forms may not help in federal cases that may parallel, but not mirror, state cases or plain diversity cases based exclusively on state law claims that do not have any federal relationship.

of the allegations contained in a complaint." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez,* 640 F.3d at 12, (citing *Iqbal,* 556 U.S. at 680, 129 S.Ct. 1937). "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not include 'detailed factual allegations.'" *Rodriguez–Vives v. Puerto Rico Firefighters Corps of Puerto,* 743 F.3d 278 (2014) (citing *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 53 (1st Cir.2013) (reiterated by *Garcia–Catalan,* 734 F.3d at 103)). The First Circuit, in a separate case, described conclusory allegations in the following manner:

> A conclusory allegation .... is one which simply asserts a legal conclusion, such as "I was retaliated against," not a specific factual allegation, such as "my supervisor threw a book at me," that merely lacks some surrounding context. *See Ocasio–Hernández,* 640 F.3d at 13-14. [However,] [w]e have held that some factual allegations may be so "threadbare" that they are in essence conclusory even if they include more than an assertion that an element of a cause of action was satisfied. *See Peñalbert–Rosa v. Fortuño–Burset,* 631 F.3d 592, 595-96 (1st Cir.2011). But this is only the case where the bareness of the factual allegations makes clear that the plaintiff is merely speculating about the fact alleged and therefore has not shown that it is plausible that the allegation is true. *Id.*
>
> *Rodriguez–Vives v. Puerto Rico Firefighters Corps of Puerto,* 743 F.3d 278, 286 (2014).

After duly describing *step one* in detail, the First Circuit continued their meticulous methodology of identifying a complaint's plausibility.

> ***Step two:*** take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief. *Ocasio–Hernandez,* 640 F.3d at 12 (again, discussing *Iqbal* and *Twombly,* among others); *see also S.E.C. v. Tambone,* 597 F.3d 436, 441-42 (1st Cir.2010) (en banc). Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a "context-specific" job that compels us "to draw on" our "judicial experience and common sense." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. And in performing our review, we realize too that we can consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to "judicial notice," and (c) "concessions" in plaintiff's "response to the motion to dismiss." *Arturet–Vélez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10, 13 n. 2 (1st Cir.2005); *see also Haley v. City of Boston,* 657 F.3d 39, 44, 46 (1st Cir.2011). (emphasis provided).
>
> *Schatz,* 669 F.3d at 55-56 (footnote omitted).

"Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Penalbert–Rosa,* 631 F.3d at 596. Nevertheless, "[n]othing about the plausibility standard requires a court to blind itself to what is obvious." *Grajales v. Puerto Rico Ports Authority,* 682 F.3d 40, 48 (1st Cir.2012). When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly* and *Iqbal.* "Context based" means that a Plain-

tiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal,* 556 U.S. at 671–72, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). However, the First Circuit has also cautioned Courts that a plausibility analysis should not be done "too mechanically":

> We emphasize that the complaint must be read as a whole. *See Elsevier,* 732 F.3d at 81–83. As we have explained, "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action." *Rodríguez–Reyes,* 711 F.3d at 55. "For pleading purposes, circumstantial evidence often suffices to clarify a protean issue." *Id.* at 56 (internal quotation marks omitted).
>
> *Garcia–Catalan,* 734 F.3d at 103.

In *Iqbal* the Supreme Court furthermore described the relationship between Rule 8(a)(2) and Rule 9(b). *See* Fed.R.Civ.P. 8(a)(2), and 9(b). Rule 9(b) states as follows:

> Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged **generally.** (emphasis provided).

The respondent in *Iqbal* argued that the second sentence of Rule 9(b) is an exception to the plausibility requirement of Rule 8(a)(2). *See Iqbal,* 556 U.S. at 686, 129 S.Ct. 1937. Hence, the respondent claimed that a mere conclusory allegation, which is otherwise insufficient, is all that is required to properly plead with respect to a person's state of mind. *See Id.* The Supreme Court rejected this argument. *Id.* The court reached this determination

after juxtaposing Rule 9(b)'s two sentences against each other. The high court recognized that the first sentence of Rule 9(b), which governs how fraud or mistake is to be pleaded, creates a higher pleading standard than what is otherwise required by Rule 8(a)(2). *See Id.* Consequently, a complaint that alleges fraud or mistake must, in addition to containing a plausible claim for relief, **also** state "with particularity the circumstances constituting fraud or mistake." *See* Fed.R.Civ.P. 9(b); 5A C. Wright & A. Miller, Federal Practice and Procedure §§ 1296 *et seq.,* p. 30 *et seq.* (3d ed.2004). However, upon analysis of Rule 9(b)'s second sentence, which governs how a person's state of mind is to be pleaded, the court made it clear that no extra *particularity requirement* is imposed. *Iqbal,* 556 U.S. at 686–87, 129 S.Ct. 1937. The high court reasoned that the word "generally," which is used in Rule 9(b)'s second sentence, is a relative term that is used, in the context of the rule, to distinguish the pleading requirements of the second sentence from the pleading requirements of the first sentence. *Id.* (alluding to 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 292 (3d ed.2004)). In summary: Rule 9(b)'s first sentence, which governs allegations of fraud or mistake, has a higher pleading standard than what is required by Rule 8(a)(2); on the contrary, Rule 9(b)'s second sentence, which governs allegations of a person's state of mind, has the same pleading standard as that which is required by Rule 8(a)(2).

> It might be argued that the second sentence in Rule 9(b) is unnecessary because it merely restates the content of Rule 8(a)(2). However, its placement in Rule 9(b) has two significances. The second sentence of the rule not only guards against the possibility that the particularity requirement in the first sentence would be extended beyond the

fraud and mistake contexts; it also suggests that the draftsmen felt a need to qualify the first sentence to insure that it was not interpreted to require a party pleading fraud or mistake to allege the specific circumstances of fraudulent intent, knowledge of the falsity of a statement, or mistaken belief in its truth. 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 292 (3d ed.2004).

When Courts are called upon to assess a 12(b)(6) motion to dismiss, or a 12(c) motion for judgment on the pleadings, they may not consider any matters outside of the pleadings unless the motion is treated as a motion for summary judgment. Fed. R.Civ.P. 12(d). Should a 12(b)(6) motion, or a 12(c) motion, be converted into a motion for summary judgment, the "parties must be given a reasonable opportunity to present all the material that is pertinent to the [newly converted motion]." *Id.*

Although we do not "mechanically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment," we do guard against allowing such a conversion where it would come as a "surprise" or be "unfair" to the party against whom judgment is rendered.

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 31 (1st Cir.2000) (*Chaparro–Febus v. International Longshoremen Ass'n, Local 1575,* 983 F.2d 325, 332 (1st Cir.1992)). The First Circuit has been quite thorough in delineating between what matters are considered a part of the pleadings and what matters are considered to be outside of the pleadings:

[I]n reviewing a 12(b)(6) [motion], it is well-established that in reviewing the complaint, we "**may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.**" *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996) (citing *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993) (explaining that the main problem of looking to documents outside the complaint—lack of notice to plaintiff—is dissipated "[w]here plaintiff has actual notice .... and has relied upon these documents in framing the complaint")). "Were the rule otherwise, a plaintiff could maintain a claim .... by excising an isolated statement from a document and importing it into the complaint...." *Id.; see also Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir.1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations"). (emphasis added).

*Clorox,* 228 F.3d at 32 (cited in approval in *Schatz,* 669 F.3d at 55–56).

### B. 28 U.S.C. § 2401(b) of the FTCA:

 "Absent a waiver, sovereign immunity (which is jurisdictional in nature) shields the United States from suit." *Villanueva v. United States,* 662 F.3d 124, 126 (1st Cir.2011) (citing *Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). The FTCA "provides a limited congressional waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Santoni v. Potter,* 369 F.3d 594, 602 (1st Cir.2004). "Under the FTCA, the federal government waives its sovereign immunity for 'injury or loss of property ... caused by the negligent or wrongful act or omission of any employee

of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' " *Solis–Alarcón v. United States,* 662 F.3d 577, 582 (1st Cir.2011) (quoting 28 U.S.C. § 1346(b)(1) (internal quotation ommitted)). *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (noting that the Federal Tort Claims Act employs "sweeping language" to waive sovereign immunity). Slightly restated, the liability of the Government under the FTCA is the same as that of a private individual under similar circumstances, governed by the law of the state, or Commonwealth of Puerto Rico, where the accident occurred. 28 U.S.C. §§ 1346(b), and 2674. Puerto Rico's tort statute, Article 1802, 31 P.R. Laws § 5141, is the applicable statute Plaintiff must satisfy because that is where the alleged actions occurred. Accordingly, Plaintiff's FTCA claims are accessed through the lens of Article 1802.

▮▮▮ In terms of substantive law, Art. 1802 of the PRCC is being applied to determine if there were actual damages that can be compensated by state law. In other words, federal law will be applied to strict procedural FTCA matters and state law will be applied to strict substantive tort matters. The reason why this Court emphasizes said methodology is that the statute of limitations under the FTCA is different from its equivalent in the PRCC. Art. 1802 establishes that a complaint or lawsuit has to be filed by a plaintiff within

one year after a claim accrues while the FTCA has a statute of limitations of two years from the date of accrual. At the outset, the Court notes that the term of two years established by federal law is the one that should be used for the instant case.[2] **Further, and most critical, it is federal law—not state law—that is used to determine the accrual date of an FTCA claim.** *Rakes v. United States,* 442 F.3d 7, 20 n. 7 (1st Cir.2006).

▮▮▮ 28 U.S.C. § 2401(b) regulates the procedure and time constraints that a plaintiff must follow before filing an FTCA lawsuit.

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency **within two years after such claim *accrues*** or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. (emphasis provided).

The consequence of not strictly complying with the timelines imposed by said statute deprives the Court of subject-matter jurisdiction over an FTCA claim. *Coska v. United States,* 114 F.3d 319, 323 n. 8 (1st Cir.1997); *cf. Sanchez,* 740 F.3d at 53–54 (1st Cir.2014) (referencing *Gonzalez,* 132 S.Ct. at 648). What constitutes "accrual" within the meaning of the FTCA has been the subject of much debate. "The general rule, within the meaning of the FTCA, is that a tort claim accrues at the time of the plaintiff's injury." *Skwira v. United States,* 344 F.3d 64 (citing *Attallah v.*

---

**2.** *See* 28 U.S.C. § 1652; *Lampf v. Gilbertson,* 501 U.S. 350, 355, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (recognizing the general rule that a state law statute of limitations applies to federal causes of action when the Congress has remained silent on the issue) (citing *Wilson v. García,* 471 U.S. 261, 266–

267, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Automobile Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *and Campbell v. Haverhill,* 155 U.S. 610, 617, 15 S.Ct. 217, 39 L.Ed. 280 (1995)).

*United States,* 955 F.2d 776, 779 (1st Cir. 1992); *Gonzalez v. United States,* 284 F.3d 281, 288 (1st Cir.2002); *and United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). However, § 2401(b) is not construed to penalize a plaintiff who in good faith did not know of the existence of the injury or its cause. Therefore, the Supreme Court enacted the *discovery rule* to endorse this aforementioned policy. *See United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (creating the discovery rule for medical malpractice claims); *see also Rakes,* 442 F.3d at 19 (acknowledging the extension of the discovery rule beyond medical malpractice claims to the point of making it a general rule in the First Circuit). The *discovery rule* states that a claim accrues "once a plaintiff **knows,** or in the exercise of reasonable diligence **should know,** (1) of [his or] her injury and (2) sufficient facts to permit a reasonable person to believe that there is a causal connection between the government and [his or] her injury." *Callahan v. United States,* 426 F.3d 444, 451 (1st Cir. 2005) (citing *Skwira,* 344 F.3d at 78) (emphasis provided). Therefore, the *discovery rule* operates as an exception to the general *time of injury rule.* However, the First Circuit has further qualified the aforementioned formulation of the *discovery rule* as follows:

The "knowledge" standard under the discovery rule has two qualifications.

First, "something less than definitive knowledge is required." *Skwira,* 344 F.3d at 78. Accrual is triggered by "the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis for filing an administrative claim against the government." *Id.* Second, a plaintiff is charged with knowledge of facts which "in the exercise of reasonable diligence [he or she] should have discovered." *González,* 284 F.3d at 288 (1st Cir.2002). This is an objective standard. *Id.*

*Callahan,* 426 F.3d at 451.

## C. Application of the Law to the Facts

 The instant case presents the following controversy: did Plaintiff comply with the statute of limitations of § 2401(b)? Thus, the first step to be taken on the path to resolving the instant controversy is determining when Plaintiff's claims "accrued" within the meaning of § 2401(b). Plaintiff, in the opposition to the motion to dismiss, see Docket No. 39, provided the Court with a timeline of dates in table format to aid in the understanding of the case at bar. The Court accepts this offering and will use said table to make this journey easier to accomplish. For the sake of clarity, the Court has included the aforementioned table below:

| Date | Event |
| --- | --- |
| April 2, 2010 | Plaintiff is admitted to the VA Hospital |
| April 7, 2010 | Bone is scraped |
| June 3, 2010 | Plaintiff is discharged from VA Hospital. At all times, VA medical staff stated that amputation of his right leg was the only option or remedy for his medical condition |
| June 3, 2010 | Plaintiff was taken to Professional Hospital in Guaynabo for a second opinion |
| June 4, 2010 | Admitted to Professional Hospital upon endovascular surgeon recommendation to amputate 1st and 2nd toe |
| June 10, 2010 | Plaintiff is discharged from Professional Hospital. |

| | |
|---|---|
| July 3, 2010 | Plaintiff is admitted to VA Nursing Home Facility |
| October 2, 2010 | Plaintiff is discharged from VA Nursing Home Facility |
| June 29, 2012 | Plaintiff filed administrative claim (Form 95) before DVA.[3] |

There is no controversy that Plaintiff filed the administrative claim (Form 95) on June 29, 2012. Hence, in order for the complaint to survive Defendants' motion, Plaintiff's claims must have accrued no earlier than June 29, 2010.

Plaintiff avers that July 3, 2010 is the correct accrual date, which would comply with § 2401(b). Plaintiff's reasoning is that on July 3, 2010, Plaintiff was admitted to the VA Nursing Facility after the successful operation of two of his toes at Professional Hospital. Allegedly, it is on said date when Plaintiff knew that the VA Hospital had misdiagnosed him. On the contrary, Defendants argue that the effective date of accrual is no later than June 4, 2010 because that is when Plaintiff acquired the requisite knowledge that the VA Hospital staff misdiagnosed him as Plaintiff opted for the less-aggressive operation soon thereafter.

 The application of the general *time of injury rule* would not make sense in the instant medical malpractice case as Plaintiff, who is not a doctor, could not have known of the misdiagnosis at the time it was made. Therefore, the application of the *discovery rule* is in order. As previously alluded to, pursuant to the *discovery rule*, an FTCA claim accrues "once a plaintiff **knows,** or in the exercise of reasonable diligence **should know,** (1) of [his or] her injury and (2) sufficient facts to permit a reasonable person to believe that there is a causal connection between the government and [his or] her injury." *Callahan,* 426 F.3d at 451 (citing *Skwira,* 344 F.3d at 78) (emphasis provided). Further, the aforementioned *knowledge standard* requires something less than definitive knowledge as "[a]ccrual is triggered by 'the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis for filing an administrative claim against the government.'" *Callahan,* 426 F.3d at 451 (citing *Skwira,* 344 F.3d at 78) (emphasis provided).

Incorporating the aforementioned *discovery rule* standards and qualifications reveals that Plaintiff's claims accrued, at the latest, on June 4, 2010. The claims

---

**3.** The Court notes that there is a discrepancy in the second amended complaint regarding the actual dates that the claims were submitted to the DVA. In Docket Entry 29, paragraph 22, Plaintiff avers that the claims were submitted to the DVA on June of 2010; in Docket Entry 29, paragraph 24, Plaintiff avers that the claims were submitted to the DVA on June 29, 2012. Consequently, the Court finds that the date used in paragraph 22 (June of 2010) is a typographical error as said date, which would easily defeat Defendants' motion to dismiss, is not referenced in any other filing and is inconsistent with the legal arguments presented. Moreover, the referenced table in itself lacks any mention of said date. Also, Plaintiff was unclear on the number of claims submitted before the DVA. *See* Docket No. 29, ¶ 29. In the before mentioned paragraph 29, Plaintiff claims that three (3) claims were filed before the DVA; however, a reading of the Second Amended Complaint reveals only one (1). *See* Docket Nos. 29, and 39. As well, Plaintiff was unclear on the date that the DVA answered their claim. *See* Docket No. 29, ¶¶ 25, and 29. Plaintiff claims, in paragraph 25, that the negative determination on Plaintiff's claim was submitted by the DVA on November 28, 2012. But then, in paragraph 29, Plaintiff states that the response was received on November 29, 2012. Either way, Plaintiff complied with the six month period established in 28 U.S.C. § 2401(b), which is not in controversy, to file the instant lawsuit before the Federal District Court.

accrued once Plaintiff received the diagnosis from the medical staff at Professional Hospital, which was in stark contrast to the diagnosis given by the medical staff at the VA Hospital. This information would allow a reasonable person to sense that he may have been misdiagnosed by the VA Hospital. Moreover, the fact that Plaintiff agreed shortly thereafter to the less-aggressive treatment supports an argument that Plaintiff, by June 4, 2010, already believed that the VA Hospital misdiagnosed him. As previously alluded to, definitive knowledge that an actual misdiagnosis occurred is not required to trigger the accrual of an FTCA claim. By June 4, 2010, Plaintiff had attained the requisite level of knowledge in order for his claims to accrue. Therefore, Plaintiff experienced an injury (emotional and physical damages) as a result of possible illicit conduct (a misdiagnosis and inadequate care) that was caused by the VA Hospital (a federal government hospital). As such, using the First Circuit's wording, that is all the knowledge Plaintiff needs to possess before "accrual is triggered." *Callahan,* 426 F.3d at 451. Each of Plaintiff's claims accrued on June 4, 2010 at the latest. As June 4, 2010 is more than two years prior to June 29, 2012, the instant action is time barred; § 2401(b) precludes the Court from attending Plaintiff's claims.

Hence, Defendants' 12(b)(1) motion shall be granted as the Court does not have subject-matter jurisdiction over the instant claims as they were filed in contravention with § 2401(b). Alternatively, pursuant to Rule 12(b)(6), the claims would have to be dismissed as Plaintiff has failed to "state [claims] upon which relief can be granted" because the instant claims were similarly filed in contravention with § 2401(b). Regardless of the path taken—be it 12(b)(1) or 12(b)(6)—the same destination is reached. All roads lead to Rome.

## IV. Conclusion:

Pursuant to the reasons previously expounded upon, the motion to dismiss the second amended complaint is **GRANTED**. *See* Docket No. 35. The Court lacks subject-matter jurisdiction to attend the merits of Plaintiff's claims as the same were filed after the two year statute of limitations had elapsed. *See* 28 U.S.C. § 2401(b). Alternatively, Plaintiff's claims should be dismissed on the grounds that the complaint fails to state any claims upon which relief can be granted. *See* 28 U.S.C. § 2401(b). Moreover, as all existing claims in this case have been dismissed, this case, in its entirety, is hereby **DISMISSED WITH PREJUDICE.** All other case motions shall be terminated upon entry of this order. Judgment shall be entered forthwith.

IT IS SO ORDERED.