FRANCISCO A. BESOSA, UNITED STATES DISTRICT JUDGE
Before the Court is defendant Peer International Corporation of Puerto Rico ("Peer International")'s motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (" Rule 12(c)"). (Docket No. 52.) Also before the Court is defendants Latin American Music Company, Inc. ("LAMCO") and ACEMLA de Puerto Rico, Inc. ("ACEMLA")'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (" Rule 12(b)(6)"). (Docket No. 45.) For the reasons set forth below, the Court GRANTS Peer International's motion for judgment on the pleadings. (Docket No. 52.) Consequently, LAMCO and ACEMLA's motion to dismiss is moot. (Docket No. 45.)
I. Background
Plaintiff J. Walter Thompson Puerto Rico ("Walter Thompson"), an advertising company, commenced this action on January 23, 2017 to resolve competing claims of ownership regarding "Llegó la Navidad" ("the composition") by Raúl Balseiro ("Balseiro").[1] (Docket No. 1.) Walter Thompson filed an interpleader complaint pursuant to Federal Rule of Civil Procedure 22 (" Rule 22") because the "claims of several claimants or the titles on which their claims depend lack a common origin or are adverse." Fed. R. Civ. P. 22(a)(1)(A).
The parties concur that Walgreens commissioned Walter Thompson to produce a marketing campaign for the 2016 Christmas season. (Docket No. 1 at p. 3.) Walter Thompson agreed to indemnify and defend Walgreens against all litigation relating to the marketing campaign. Id. In furtherance of the campaign, Walter Thompson obtained a license from music publisher Peer International to use "Llegó la Navidad" for a $5,500.00 fee. Id. at p. 3.
After the marketing campaign aired throughout Puerto Rico, defendants LAMCO, a music publisher, and ACEMLA, a performing arts society, contacted Walgreens, claiming that LAMCO and ACEMLA possessed exclusive rights to the composition.[2] Id. at pp. 2-3. Walter *614 Thompson informed LAMCO and ACEMLA that it procured a license for "Llegó la Navidad" from Peer International. Id. at p. 2. Moreover, Walter Thompson provided LAMCO and ACEMLA with the following documents: (1) an October 1992 contract between Peer International and Balseiro transferring all rights and title of the composition to Peer International, (2) a certificate of registration from the United States Copyright Office, and (3) a certificate of recordation dated September 15, 2002. Id. at p. 4.
LAMCO and ACEMLA again contacted Walgreens, providing Walgreens with an additional copyright certificate for "Llegó la Navidad." Id. at p. 5. Because ownership of the composition remained in dispute, Walter Thompson withheld payment of the $5,500 licensing fee from Peer International, and initiated an interpleader action because "neither Peer Music nor LAMCO ACEMLA has taken any action among themselves in order to clarify the ownership of the copyright in the composition 'Llegó la Navidad.' " Id.
LAMCO and ACEMLA asserted a counterclaim, cross-claim, and third-party complaint against Walter Thompson, Peer International, and Walgreens, respectively. (Docket No. 14.) In the counterclaim, LAMCO alleges that it owns the copyright to "Llegó la Navidad." Id. at p. 6. LAMCO argues that Walter Thompson failed to secure a license from LAMCO, entitling LAMCO and ACEMLA to damages, attorney's fees, and injunctive relief pursuant to 17 U.S.C. sections 502 and 503. Id. at p. 7. With regard to the cross-claim, LAMCO and ACEMLA request a declaratory judgment that "as between LAMCO/ACEMLA and Peer [International], Peer [International] has no rights in and to 'Llegó la Navidad.' " Id. at p. 8. Finally, in the third-party complaint, LAMCO and ACEMLA maintain that Walgreens is liable for copyright infringement because Walgreens "never secured a license" to use the composition from LAMCO or ACEMLA. Id. at p. 9.
Walter Thompson asserted a cross-claim against Peer International, contending that Peer International is liable to Walter Thompson for damages stemming from use of the composition in the event that LAMCO is the legal owner of the composition.[3] (Docket No. 16 at p. 5.) Subsequently, Peer International cross-claimed against LAMCO and ACEMLA, seeking a declaratory judgment, injunctive relief, and attorney's fees. (Docket No. 21.)
Two dispositive motions are pending before the Court. LAMCO and ACEMLA move to dismiss Peer International's cross-claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (" Rule 12(b)(6)"). (Docket Nos. 21 & 45.) Additionally, Peer International moves for judgment on the pleadings pursuant to Rule 12(c). (Docket *615 No. 52.) LAMCO and ACEMLA's motion to dismiss is moot because the Court grants Peer International's motion for judgment on the pleadings.
II. Motion for Judgment on the Pleadings Standard
When considering a motion pursuant to Rule 12(c), a "court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." Id. (internal quotation and citation omitted). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). When faced with a motion for judgment on the pleadings, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernández, 640 F.3d at 12 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ). Any "[n]on-conclusory factual allegations in the complaint [, however,] must ... be treated as true, even if seemingly incredible." Ocasio-Hernández, 640 F.3d at 12 (internal citation omitted). Where those factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. Id., 640 F.3d at 12. A motion for judgment on the pleadings should only be granted if "it clearly appears according to the facts alleged, that the plaintiff cannot recover on any viable theory." Garita Hotel Ltd. P'ship. v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992).
A. Collateral Estoppel
Disposition of this action hinges on whether LAMCO and ACEMA, or Peer International own the composition. The doctrine of collateral estoppel, or issue preclusion, is dispositive and compels this Court to grant judgment on the pleadings in favor of Peer International.
1. Legal Standard
Collateral estoppel preserves judicial resources and prevents inconsistent dispositions by "bar[ring] parties from relitigating issues of either fact or law that were adjudicated in an earlier proceeding." Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 29 (1st Cir. 2017) (internal citation omitted). Federal common law governs the Court's analysis because Peer International predicates collateral estoppel on a prior federal district court action. (Docket No. 52; citing Latin Am. Music Co. v. Media Power Grp., Inc., Civil No. 07-2254 (ADC) ); see Taylor v. Sturgell, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.").
To invoke collateral estoppel, federal common law requires Peer International to establish that:
(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment, and (4) the determination of that issue was essential to the judgment.
Latin Am. Music. Co. v. Media Power Grp., Inc., 705 F.3d 34, 42 (1st Cir. 2014) (internal citation omitted) (holding that "[t]he district court correctly concluded that LAMCO was collaterally estopped from litigating the claims as to the four Corretjer songs"); Robb Evans & Assocs., LLC v. United States, 850 F.3d 24, 32 (1st Cir. 2017). For collateral estoppel to attach, the overlapping issue "need not be absolute, it is enough that the issues are in substance identical." Jones v. City of Boston, 845 F.3d 28, 33 (1st Cir. 2016) (citing *616 Montana v. United States, 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ). Indeed, collateral estoppel may apply "where the subsequent proceeding involves a cause of action different from the first." Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012). A defendant may premise collateral estoppel on an earlier determination in which the defendant was not a party. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327-30, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ("Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects [ ] the aura of the gaming table."). Ultimately, the Court must determine "whether a party has had a full and fair opportunity for judicial resolution of the same issue." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 771 (1st Cir. 2010) (internal citation omitted).
An assessment of Latin Am. Music Co. v. Media Power Grp., Inc., Civil No. 07-2254, is necessary to determine whether LAMCO and ACEMLA had a full and fair opportunity to assert ownership over the composition.
2. Prior Litigation
In 2007, LAMCO and ACEMLA sued Media Power Group, Inc. ("Media Power") for copyright infringement pursuant to the Copyright Act, 17 U.S.C. sections 101 et. seq . (Case No. 07-2254, Docket No. 1.) According to LAMCO and ACEMLA, Media Power "infringed the copyrighted work 'Llegó la Navidad' by composer Raul Balseiro" by broadcasting the composition on three occasions in 2006. Id. at p. 9. The Media Power action permitted LAMCO and ACEMLA "to defend their copyrights and the authors of these works," including their alleged ownership of the composition. Id. at p. 5.
The parties adequately represented their interests in the Media Power litigation. LAMCO, ACEMLA and Media Power conducted extensive motion practice and participated in multiple settlement conferences to no avail. See Civil No. 07-2254, Docket Nos. 100, 103, 105, 112 and 150. LAMCO and ACEMA's copyright claim regarding "Llegó la Navidad" survived Media Power's motion for summary judgment. (Docket No. 148 at p. 11.) A seven-day jury trial commenced on August 8, 2011. (Docket No. 193.) LAMCO and ACEMA moved the copyright registration and copyright recordation for "Llegó la Navidad" into evidence. (Docket No. 209). Bernard, the president of LAMCO and ACEMLA, testified for two days. (Docket Nos. 193 & 194.) Joey Mercado ("Mercado"), director for the Rights of Published Relations for Broadcast Music, Inc. ("BMI"), also testified at trial. Mercado stated that "Llegó la Navidad" had been "administered by Peer Music, as part of the BMI catalog" since 1992. (Docket 232 at p. 105.) Significantly, Mercado testified that "Peer is the owner of the right to 'Llegó la Navidad' by Raúl Balseiro." Id. at p. 113. Counsel for LAMCO and ACEMLA cross-examined Mercado, attempting to undermine his testimony. Id. at p. 103-16.
The trial court provided the jury with the following instruction:
An owner of copyright owns the right to exclude any other person from reproducing, performing, displaying, or using the work covered by copyright for a specified period of time [...] In this case, plaintiffs contend, and the defendants dispute, that plaintiffs are, and at all relevant times, have been the copyright owner or license of exclusive and/or non-exclusive rights, under the United States Copyright with respect to ["Llegó la Navidad.]"
(Docket No. 231 at p. 147-49.) The jury verdict form asked whether "by a preponderance of the evidence" "[LAMCO and ACEMLA] have established ownership as to any of these songs?" (Docket No. 211 at *617 p. 1.) The jury answered "No." Id. Because the jury found that LAMCO and ACEMLA possessed no ownership interest in the composition, their deliberations concluded. Id. LAMCO and ACEMLA's failure to demonstrate ownership of "Llegó la Navidad" proved fatal to their case.
3. Current Litigation
The gravamen of LAMCO and ACEMLA's cross-claim is that Peer International "issued licenses that purport to permit the use of 'Llegó la Navidad.' " (Docket No. 14 at p. 8.) Peer International is, according to LAMCO and ACEMLA, liable for copyright infringement. Id. at p. 9. Aside from seeking a declaratory judgment regarding ownership of the composition vis à vis Peer International, the sole cause of action in LAMCO and ACEMLA's cross-claim is for copyright infringement. (Docket No. 14.) Copyright protection encompasses "original work of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reported, or otherwise communicated." 17 U.S.C. § 102(a).
To prevail on the copyright infringement claim, LAMCO and ACEMLA must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 39 (1st Cir. 2012). LAMCO and ACEMLA shoulder the burden of proving a valid copyright for the composition. T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006). Generally, a certificate of copyright is prima facie evidence of valid ownership. See Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995).
4. Collateral Estoppel Analysis
LAMCO and ACEMLA are collaterally estopped from asserting copyright protection for "Llegó la Navidad." The Court holds that Media Power constitutes preclusive precedent for purposes of this action. See Media Power Grp., Inc., Civil No. 07-2254 (ADC). First, the central issue in this litigation is the same issue involved in Media Power. See Case No. 07-2254 at Docket No. 4; Case No. 17-1094 at Docket No. 1. Ownership of "Llegó la Navidad" is the dispositive issue in both actions. Id. Ownership of the composition was "actually litigated." Ramallo Bros. Printing, Inc. v. El Día, Inc., 490 F.3d 86, 90 (1st Cir. 2007) (holding that "a plaintiff cannot avoid the bar of collateral estoppel simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit brought by the same plaintiff"). In fact, LAMCO and ACEMLA cite the same certificate of copyright for "Llegó la Navidad" that the jury rejected as proof of ownership in Media Power. (Civil No. 07-2254, Docket No. 209 at p. 1. Docket No. 55 at p. 4-6; Civil No. 17-1094, Docket No. 14 at p. 6.)
LAMCO and ACEMLA appealed the decision in Media Power decision. Media Pwr. Grp., Inc., 705 F.3d 34, 39 (1st Cir. 2013). The issue of ownership, LAMCO and ACEMLA argued, was improperly submitted to the jury. Id. The First Circuit Court of Appeals rejected this argument, holding that:
At trial, the parties treated ownership as a live issue. In the jointly proposed pretrial order and in its opening statement to the jury, LAMCO acknowledged its burden to establish ownership. LAMCO then produced evidence of ownership, and the defendants challenged the sufficiency of LAMCO's evidence.
Id. at 39-40. Ownership of "Llegó la Navidad" was sufficiently litigated in Media Power, as evidenced by a review of the trial record and by the First Circuit Court of Appeals' subsequent decision. See Media Power Grp., Inc., 705 F.3d 34.
*618 The final two elements of collateral estoppel are satisfied because ownership of "Llegó la Navidad" was determined by a final judgment and the issue was essential to the decision. The jury determined that LAMCO and AMCELA had no ownership of the composition, and the court entered a final judgment dismissing the case with prejudice. (Case No. 07-2254, Docket Nos. 211 & 213.) As in this case, ownership constituted an essential element to their copyright infringement claim. The question of ownership was the first question on the jury verdict form: After the jury answered "No," LAMCO and ACEMLA's case concluded without further deliberation. Id. Indeed, courts have applied collateral estoppel in dismissing actions commenced by LAMCO and ACEMLA for copyright infringement. In Banco Popular De P.R., Inc., v. Latin Am. Music Co., the court applied collateral estoppel because "the issue sought to be precluded in this action is the same as that involved in the earlier action, that it was actually litigated and determined by a valid and binding final judgment, and that the determination of the issue was essential to the judgment."[4] No. 01-1142 (GAG), 2009 WL 1140423 *2, 2009 U.S. Dist. LEXIS 35438 *7 (D.P.R. Apr. 24, 2009) (Gelpí, J.). LAMCO and ACEMLA's attempt to disregard the jury's determination of ownership is unpersuasive for the same reasons that the First Circuit Court of Appeals addressed on appeal. See Media Power Grp., Inc., 705 F.3d 34. Accordingly, LAMCO and ACEMLA are precluded from asserting ownership of "Llegó la Navidad."
Because the Court finds that LAMCO and ACEMLA are barred from claiming ownership of the composition, the remaining causes of action are dismissed as moot. The interpleader complaint is dismissed because Walter Thompson is no longer exposed to liability stemming from LAMCO and ACEMLA's purported interest in "Llegó la Navidad." (Docket No. 1.) The counterclaim filed by LAMCO and ACEMLA against Walter Thompson, the third-party complaint filed by LAMCO and ACEMLA against Walgreens, and the cross-claim filed by Peer International against LAMCO and ACEMLA are similarly dismissed. (Docket Nos. 14, 16 and 21.)
III. Order to Show Cause
The Court finds that this litigation is frivolous. A frivolous lawsuit may result in sanctions, such as an award of attorney's fees. Fed. R. Civ. P. 11(c). Federal Rule of Civil Procedure 11 (" Rule 11") provides that:
By presenting to the court a pleading, written motion, or other paper [...] an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [...] the claims, defenses, and other legal contentions are warranted by existing law or for establishing new law.
Fed. R. Civ. P. 11(b)(2). Courts employ an objective standard in determining whether a litigant and his or her attorney reasonably commenced and litigated a cause of action. See Cruz v. Savage, 896 F.2d 626, 630 (1st Cir. 1990) (affirming imposition of sanctions pursuant to Rule 11 because "plaintiffs' attorney's litigation of this claim was 'a vexatious time consuming exercise *619 which bore no fruit.' "). While the imposition of Rule 11 sanctions does not require a finding of bad faith, a showing of at least culpable carelessness is required. Citibank Global Mkts., Inc. v. Santana, 573 F.3d 17, 32 (1st Cir. 2009). The following two circumstances persuade the Court that this litigation is unfounded: (1) the 1995 agreement between LAMCO, ACEMLA and Balseiro and (2) representations made by LAMCO and ACEMLA in bankruptcy proceedings.
A. The 1995 Contract Between ACEMLA and Balseiro
Balseiro transferred all of his rights, title and interests in "Llegó La Navidad" to Peer International pursuant to an October 26, 1992 agreement. (Docket No. 21, Ex. 1 at p. 1.)[5] Balseiro subsequently transferred ownership of certain compositions to LAMCO and ACEMLA on April 22, 1995. (Docket No. 21, Ex. 2.) LAMCO and ACEMLA base their purported ownership of "Llegó la Navidad" on the 1995 agreement. (Docket No. 14 at p. 6.)
The agreement between Balseiro, LAMCO, and ACEMLA is suspect for several reasons. First, the parties adopted a ten-year term for the agreement beginning with the date of signature. Id. at p. 1. Neither LAMCO nor ACEMLA claim that the parties extended the agreement's term beyond the ten years. Additionally, Balseiro identified himself in the agreement as a member of Peer International. Id. at p. 2. Balseiro declared that "no musical number submitted [...] to ACEMLA has been assigned to any other organization, except numbers that might have been assigned to a publisher as stipulated, and which has been duly notified." Id. at p. 2. "Llegó la Navidad" is the first song listed in the corresponding stipulation that the parties attached to the agreement. Id. at p. 3. Whether this agreement substantiates LAMCO and ACEMLA's ownership of the composition is questionable at best.
B. Bankruptcy Proceeding
On March 24, LAMCO and ACEMLA filed for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. sections 301, et seq .[6] (Docket No. 38.) In asset schedules submitted to the bankruptcy court, the only property listed that LAMCO and ACEMLA claimed to own are their respective logos, each valued at $1.00. (Docket No. 52, Ex. 2 at p. 7.) Absent from LAMCO and ACEMLA's asset schedule is "Llegó la Navidad." Id. In sum, LAMCO and ACEMLA own "Llegó la Navidad" for purposes of seeking relief pursuant to the Copyright Act, but not for purposes of the bankruptcy proceeding. This inconsistency bolsters the Court's conclusion that this action is meritless.
The United States District Court for the Southern District of New York expressed identical misgiving regarding a similar LAMCO and ACEMLA litigation, and for the same reasons. In Latin American Music Company v. Spanish Broadcasting System, Inc., Civil No. 13-1526 (RJS), LAMCO and ACEMLA sued a radio station for copyright infringement. LAMCO and ACEMLA "represented that they were the copyright owners or licensees of exclusive rights with respect to the songs at issue in *620 this case." No. 13-1526, Docket No. 150. The court in Spanish Broadcasting System took exception to LAMCO's conflicting representations to the bankruptcy court. Id. at p. 5. Despite assertions that LAMCO owned the disputed composition, "LAMCO's bankruptcy filings in the United States Bankruptcy Court for the District of Puerto Rico, which Mr. Bernard also signed and authenticated during cross-examination, indicates that LAMCO owns no intellectual property beyond its logo." Id. at p. 4. The court ordered counsel for LAMCO and ACEMLA to identify the basis for their assertions that LAMCO and ACEMLA owned the relevant compositions.
This Court ORDERS Jelka L. Duchesne, Ibraham Latiff-Carrasquillo, Robert Penchina, and Kelly D. Talcott, as counsel for LAMCO and ACEMLA, to submit individual filings addressing (1) whether LAMCO and ACEMLA claimed to own "Llegó la Navidad," (2) on what basis counsel filed documents to the Court representing that LAMCO and ACEMLA own "Llegó la Navidad," and (3) why the Court should not impose sanctions pursuant to Rule 11. To the extent that the information requested in this Order to Show Cause implicates the attorney-client privilege, the filings may be submitted under seal and accompanied by an explanation as to why the attorney-client privileged is implicated.
IV. CONCLUSION
For the reasons set forth above, the Court GRANTS Peer International's motion for judgment on the pleadings. (Docket No. 52.) LAMCO and ACEMLA's motion to dismiss is DENIED as moot. Accordingly, the complaint, cross-claims, counterclaim, and third party complaint are DISMISSED WITH PREJUDICE. (Docket Nos. 1, 14, 16 and 21.)
Judgment shall be entered accordingly.
IT IS SO ORDERED .

Federal jurisdiction exists in this civil action. The claims asserted by Walter Thompson arise from the United States Copyright Act, a federal statute, 17 U.S.C. sections 101 et seq .See 18 U.S.C. § 1331.

Luis Raúl Bernard ("Bernard") serves as president of LAMCO and ACEMLA. See Affirmation of Luis Raúl Bernard, Latin Am. Music Co. v. Media Power Group, Inc., Civil No. 07-2254 (ADC) (D.P.R. Oct. 21, 2009) (Docket No. 57, Ex. 51 at p. 2.) The Court takes judicial notice of the pleadings and judicial orders docketed in Media Power Group. See Rodríguez- Torres v. Gov't Dev. Bank of P.R., 750 F.Supp.2d 407, 411 (D.P.R. 2010) (Besosa, J.) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand") (internal citation omitted). Bernard founded LAMCO and ACEMLA in 1980 to assist composers in obtaining, monitoring, and collecting copyright royalties. Peer Int'l Corp. v. Latin Am. Music Corp., 161 F.Supp.2d 38, 43 (D.P.R. 2001) (Pérez-Giménez, J.).

Walter Thompson classifies this additional claim against Peer International as a "cross-claim." (Docket No. 16.) Federal Rule of Civil Procedure 13, however, defines "cross-claim" as "any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim." Fed. R Civ. P. 13(g) ; see Leon-Figueroa v. Tropigas De P.R., Inc., No. 06-1504, 2010 WL 11545575 *2, 2010 U.S. Dist. LEXIS 149055 *6 (D.P.R. Mar. 22, 2010) ("Rule 13(g) does not define the term 'coparty,' although caselaw generally defines a coparty as any party that is not an opposing party.") (Delgado-Colón, J.). In the interpleader complaint, Walter Thompson and Peer International are adversaries, not coparties. (Docket No. 1.) Accordingly, Walter Thompson's additional claim is categorized more accurately as an amendment to its interpleader complaint. See Docket Nos. 1 and 16.

Tellingly, LAMCO and ACEMLA reference the Media Power litigation just once in their response to Peer International's motion for judgment on the pleadings. (Docket No. 53.) Without addressing the preclusive effect of Media Power, LAMCO and ACEMLA provide commentary rather than legal argument. They contend that "other factors during the Media Power Action litigation greatly affected the fairness of the proceedings." Id. at p. 12.

Peer International objected a certificate of registration from the United States Copyright Office on October 30, 2002. (Docket No. 51, Ex. 1 at p. 3.)

The Court stayed this action pursuant to the automatic stay provision set forth in 11 U.S.C. § 362. (Docket No. 39.) The bankruptcy court granted Peer International's motion to lift the automatic say. Docket No. 40; see No. 17-2023-ESLAA (LAMCO), Docket No. 151 (Lamoutte, J.). Pursuant to the bankruptcy court's order, Peer International may "pursue [this] action up to final judgment, and collection [is] to be through bankruptcy process." Id.